No. 28,544.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Appellant,* v. THE CITY OF HIAWATHA, A. P. HAAS, HARVEY KINZIE and WARD SALISBURY, Trustees of the Hiawatha Memorial Auditorium, *Appellees.*

(272 Pac. 118.)

Opinion filed December 8, 1928.

*William A. Smith,* attorney-general, *W. F. Means* and *Walker F. Means,* both of Hiawatha, for the appellant.

*W. E. Archer,* of Hiawatha, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the attorney-general to enjoin the city and the trustees of the Hiawatha memorial auditorium from carrying on the picture-show business in the memorial auditorium, which had been built and maintained at public expense. The court denied the injunction and plaintiff appeals.

The electors of the city voted bonds in the sum of $75,000 and used the proceeds in the erection of a military memorial in pursuance of the authority granted by the legislature in the Laws of 1921, chapter 256. Among other rooms the building included an assembly room fitted with a stage, which accommodated about 1,200 persons. Soon after the building was erected the trustees of the auditorium leased the assembly room to one Wm. L. Shenkelberger, to be used in showing moving pictures and also for road shows, at a rental of $7 for each night when picture shows were given, and for one-half of

the gross receipts when road shows were given. The right of the trustees to rent the building for these purposes was challenged, and in an injunction proceeding that was brought the court held that the trustees were without right or authority to lease the auditorium for the show business and granted an injunction against the continuance of the business under the lease. Afterwards the trustees began the giving of shows in the auditorium every week night, except on a few occasions reserved for other purposes, charging an admission fee which is about ten cents less than is usually charged by other show houses. The trial court concluded that the statute gave the city and its trustees implied power to carry on the picture-show business, and it therefore denied the injunction. The statute under which the memorial building was erected provided—

"That the various counties and cities of the state of Kansas are hereby authorized and empowered to vote bonds or incur indebtedness in the manner hereinafter prescribed for the erection of such memorials as may be petitioned for as suitable and proper to commemorate the valorous achievements of the citizens of the respective cities or counties who as soldiers, sailors and marines entered the service of the United States during the war with Mexico, the Indian wars, the war of the rebellion, the Spanish-American war, and the great World War from 1914 to 1919, including therein those devoted women of the corps of the Red Cross nurses attached to the service of the United States; and also those citizens of the county or municipality who enlisted in the military, naval or Red Cross service during the great World War from 1914 to 1919. Such memorial so petitioned for may consist of a building, monument, arch, or other structure, or improved highway, park or boulevard." (R. S. 73-401.)

This statute has already received consideration in cases where cities undertook to lease memorial buildings erected and maintained at public expense to private parties for private purposes. It was held that no power had been conferred by the legislature to lease the whole or any part of the building. (*Darby v. Otterman,* 122 Kan. 603, 252 Pac. 903; *Electric Theater Co. v. Darby,* 123 Kan. 225, 254 Pac. 1035; *State, ex rel., v. City of Independence,* 123 Kan. 766, 256 Pac. 799.) Since memorial buildings may not be leased to private parties to carry on private business, may they be used by the city or its trustees to carry on a commercial enterprise such as a picture show or theatrical business? It is conceded that there is no express authority in the act for the city to engage in the moving-picture business or any other commercial enterprise in the building. A moving-picture show is a well-recognized kind of private business,

carried on by private parties in most of the cities, towns and community centers of the state. It is now almost as well recognized and common as the grocery and clothing businesses. A vast amount of money is invested in them, and a municipality engaged in the business will necessarily meet with sharp competition. Can it be said that the power exercised by the defendant in this commercial enterprise may be fairly implied from the powers granted? The legislature has conferred upon cities municipal powers and functions to be exercised for public purposes. In an early case it was held that—

"Municipal corporations are creations of law and can exercise only powers conferred by law and take none by implication." (*City of Leavenworth v. Rankin,* 2 Kan. 357.)

Powers expressly granted carry with them such powers as are incidental to them and are indispensable to the declared public purpose. (19 R. C. L. 768.) The statute which provides for the erection of military monuments or memorial buildings to commemorate the valorous achievements of American soldiers does not carry the implication that such monuments or buildings are to be used for commercial purposes, or that the cities might heat, maintain and otherwise keep them in repair by the profits gained from carrying on a private business in the buildings. Instead of providing that the expense of maintenance should be met by the profits earned in carrying on a commercial enterprise, the legislature provided that:

"The expense of maintenance of said memorial shall be paid out of the general fund of the county or city, or in case the same shall not be sufficient shall be paid out of a special fund which shall be created, for which the counties or cities are authorized to make a levy of not more than five-tenths of one mill per annum." (Laws 1925, ch. 247.)

Nothing in the powers granted by the legislature warrant the implication that such buildings can be used by municipalities for carrying on a private business for profit, or perhaps for loss. Evidently such a purpose was not within the intent of the legislature, and even if it had undertaken to confer that power it may well be questioned whether the act would have been valid.

Aside from the consideration that the statute does not expressly or impliedly authorize municipalities to carry on the business in which defendants are engaged, we think it is beyond the reach of municipal powers, in that it is repugnant to our state policy as evidenced by the constitutional, statutory and common law of the

state. In *State, ex rel., v. Kaw Valley Drainage District*, 126 Kan. 43, 276 Pac. 31, the court had under consideration the question whether the drainage district .could engage in the business of conducting a sand plant for profit. The sand to be sold was to be obtained from the bed of the river which the directors of the district were dredging for the benefit of the district and the protection of the people from floods. The money for the project was to be derived from taxation and from special assessments levied on property deemed to be specially benefited by the improvements. It was held that the business of operating a sand plant for profit was a commercial enterprise in which the district could not engage in competition with private parties conducting the same business. It was said:

"In accordance with the scope and purpose of our constitution and especially section 8, of article 11, it is our policy for neither the state nor subdivisions to engage in any purely commercial enterprise." (p. 49.)

The court quoted as authority for its holding an excerpt from *State v. Kelly*, 71 Kan. 811, 81 Pac. 450, as follows:

"It has been the policy of our government to exalt the individual rather than the state, and this has contributed more largely to our rapid national development than any other single cause. Our constitution was framed and our laws enacted with the idea of protecting, encouraging and developing the individual enterprise, and if we now intend to reverse this policy and to enter the state as a competitor against the individual in all lines of trade and commerce, we must amend our constitution and adopt an entirely different system of government." (p. 836.)

This is deemed a controlling authority in the present action. In the early case of *Spencer v. School District*, 15 Kan. 259, an action was brought to enjoin the leasing and use of a school building for other than school purposes. The board of directors had allowed the building to be used for divers purposes, such as the holding of religious, political and social meetings, and it did not appear that these meetings were held without the consent of the majority of the electors of the district. The question presented was, May the majority of the taxpayers and electors of the district permit the use of the schoolhouse built with funds raised by taxation for other than school purposes? In answer to the question the court said:

"It seems to us that upon well-settled principles the question must be answered in the negative. The public schoolhouse cannot be used for any private purposes. The argument is a short one. Taxation is invoked to raise funds to erect the building; but taxation is illegitimate to provide for any

private purpose. Taxation will not lie to raise funds to build a place for a religious society, a political society, or a social club. What cannot be done directly cannot be done indirectly. As you may not levy taxes to build a church, no more may you levy taxes to build a schoolhouse and then lease it for a church. Nor is it an answer to say that its use for school purposes is not interfered with, and that the use for the other purposes works little, perhaps no immediately perceptible injury to the building, and results in the receipt of immediate pecuniary-benefit. The extent of the injury or benefit is something into which courts will not inquire. The character of the use, is the only legitimate question." (p. 262.)

It was accordingly held that the use was unauthorized by law and might be enjoined at the instance of a taxpayer, even if a majority of the taxpayers and electors assent to such use and it will result in pecuniary benefits to the district.

It is argued that the giving of these shows in the auditorium will be of some educational advantage to the community, but it cannot well be said that moving picture and road shows are educational in purpose or effect. In Ohio a city undertook by ordinance to appropriate public funds for a municipal moving-picture theater, and the right to do so being challenged, the court concluded that it could not be done, as it would be an unauthorized use of public money. It was said that the "suggestion that moving-picture exhibitions might be made educational is gratuitous because that is not their natural object." (p. 97.) It was further said, in a concurring opinion, that—

"The question has been mooted and debated in this case, whether the maintenance and management of moving-picture shows is a legitimate function of municipal government. This question would better be raised on a different record than the one before us. But it has been pressed upon us as one fairly arising upon the facts of the case. As defined by this record, the moving-picture theater must be understood according to the common acceptation—a business for profit. It may be for loss. Public revenue may not be raised nor expended in that way. This is not a function of constitutional government in Ohio. The kinetoscope may be used at some time, in some way, in the proper management of municipal affairs and for the public weal. But the moving-picture show business, as defined, or rather undefined, in this ordinance, is not a fair instance of such a use. Upon the record before us, it is, to say the least, *prima facie ultra vires* of the municipal council." (*State, ex rel., v. Lynch,* 88 Ohio St. 71.)

We conclude that the city and the trustees are without authority to give moving-picture and road shows in the memorial auditorium built at public expense and maintained, at least in part, at public expense; therefore the judgment is reversed and the cause remanded with directions to enter judgment for plaintiff.