No. 31,663

PAUL F. RODENBECK, *Appellant*, v. HARRY DARBY, JR., et al., *Appellees.*

(33 P. 2d 306.)

Opinion filed June 9, 1934.

*John E. Blake* and *Lee E. Weeks,* both of Kansas City, for the appellant.

*Alton H. Skinner,* city attorney, *John C. O'Brien,* deputy city attorney, *Arthur J. Stanley, Arthur J. Stanley, Jr., Lee Judy* and *A. J. Herrod,* all of Kansas City, for the appellees.

*Lee Vaughn, Jr.,* of Kansas City, as *amicus curiæ.*

The opinion of the court was delivered by

DAWSON, J.: This was an action by a taxpayer to restrain the defendants, who constitute the board of trustees of the Soldiers and Sailors Memorial Building in Kansas City, from leasing the auditorium under their charge to the local post of the American Legion.

The post is an organization of ex-soldiers and sailors of the United States whose avowed purposes are to preserve and stimulate the patriotic sentiments of military men who had served their country and to assist World War veterans and their families in need of their fraternal assistance.

The lease complained of grants to the American Legion the use of the main auditorium of the Memorial Building each Thursday night for the period of a year in which to hold athletic contests. The consideration is $50 for each time the auditorium is so used. This sum is estimated as sufficient to pay whatever expenses of lighting, heating and janitor service the defendant trustees may sustain from

such use of the property. The Legion charges admission fees for its entertainments, and whatever net profits there may be are devoted to its charitable activities. One provision of the lease is that whenever there is some *bona fide* need for the auditorium for a public purpose, such need shall have precedence over the leasing privilege granted to the Legion.

The cost of maintaining the Memorial Building varies from $10,-000 to $16,000 per annum, and the receipts from all sources for the use of the building, including the sums paid by the American Legion, approximate $6,000 per annum.

These and similar matters, needless to set down in detail, were developed by the pleadings, by elaborate affidavits, and an agreed statement of facts.

Plaintiff, as the basis of his action, alleged that he was a resident taxpayer of Kansas City and contributed money by way of taxes on both real and personal property within the city, that the defendants caused large sums of money to be taken from the public treasury for the expenses, upkeep, maintenance, fuel and lights of said building, all of which on Thursday evenings were and would be for the benefit of the American Legion, and that its use of the auditorium as lessee was private and not public, and—

"12. That the conduct of the defendants in the past and on Thursday, May 18, 1933, unless restrained by this court, amounts, or will amount, to a diversion of money collected for taxes for public purposes to private uses, and has in the past and will in the future amount to the taxation of the residents of Kansas City, Kan., for private and not public purposes. That such gift of public property to private individuals in said contract or lease is *ultra vires,* void and unlawful, and the conduct of the defendants in the past, and will on Thursday, May 18th, 1933, increase plaintiff's taxes, and the further carrying out of the conspiracy or agreement and making of said lease is and was unlawful and will further increase plaintiff's taxes. .

"And unless restrained from so doing, the defendants will continue to carry out said unlawful contract and will continue to unlawfully occupy said property, and the plaintiff and other citizens will be excluded therefrom and the plaintiff will suffer great and irreparable damages, together with all other taxpayers of the city."

The defendant trustees and the local post of the Legion admitted the fact of the contract, and sought to justify it, and denied that plaintiff's taxes were or would be affected by the contract.

The trial court made a general finding against the plaintiff and entered judgment in favor of defendants.

Plaintiff appeals, citing several of our recent cases which dealt

with the leasing of several similar memorial buildings constructed shortly after the World War to record the public's appreciation of the valor and services of our military forces. In two of these, however, the action was brought in behalf of the state, which alone, under ordinary circumstances, could challenge an unauthorized use of such public property. (*State, ex rel., v. City of Independence*, 123 Kan. 766, 256 Pac. 799; *State, ex rel., v. City of Hiawatha*, 127 Kan. 183, 272 Pac. 113.)

In *Darby v. Otterman*, 122 Kan. 603, 252 Pac. 903, the action was brought by a private citizen and taxpayer complaining of the leasing of a part of this building to an organization of veterans for a period of twenty years at the sum of one dollar per annum. In that case plaintiff founded his action on two provisions of statute (R. S. 13-1403 and 60-1121) which authorize a private person to maintain an action to enjoin any illegal act of a public official the necessary effect of which is to increase his burdens as a taxpayer; and of course the lease contract was not only illegal but would obviously increase the plaintiff's burdens as a taxpayer.

In *Electric Theater Co. v. Darby*, 123 Kan. 225, 254 Pac. 1035, it was conceded that the contemporary case of *Darby v. Otterman*, supra, controlled the controversy. The case of *Robley v. Smith*, 134 Kan. 220, 5 P. 2d 1083, was an action to recover money, founded on an illegal contract, the underlying motive of which was a reprehensible scheme to evade the injunction granted in the case of *State, ex rel., v. City of Independence*, 123 Kan. 766, 256 Pac. 799.

In *Glenn W. Dickinson Theaters v. Lambert*, 136 Kan. 498, 16 P. 2d 515, the action was brought by a private taxpayer to enjoin the city of Hiawatha and the trustees of the local Memorial Auditorium from continuing to lease or operate the auditorium for a moving-picture show, or road show, for revenue in competition with the moving-picture show owned and conducted by the plaintiff. The injunction was granted by the trial court within prescribed limits and restrictions, but not because of the interest of plaintiff as a mere taxpayer. Clearly the relief to plaintiff was because he was the proprietor of a business which would suffer special injury by the unlawful use of the public auditorium.

In the present case plaintiff wholly failed to make good the allegations of his petition that his burdens as a taxpayer would be increased because of the challenged use of the Soldiers and Sailors

Memorial Building of Kansas City. Moreover, there is now a statute which confers on the defendant trustees express authority to lease any part of a memorial building for a term not exceeding one year, although in construing this statute this court has held that it does not authorize such leasing for an ordinary commercial enterprise. (*Glenn W. Dickinson Theaters v. Lambert*, supra.)

In *Amusement Syndicate Co. v. City of Topeka*, 68 Kan. 801, 74 Pac. 606, the use of the city auditorium of Topeka for the purpose of giving public entertainments for profit was challenged by a private corporation which operated a theater in Topeka. The trial court denied the injunction sought by plaintiff, and on appeal this court said:

"All of the cases, from *Craft v. Jackson County*, 5 Kan. 518, down to the latest decision on the question, argue against the right of plaintiff to maintain this proceeding. In *Mining and Gas Co. v. Gas and Mining Co.*, 55 Kan. 173, 179, 40 Pac. 326, where one company was seeking to prevent another from interfering with its monopoly of gas business, it was said: 'A private person or corporation will not be recognized in a court of justice as the guardian of purely public interests, nor to further its private ends by assuming that character.'

"The plaintiff having no right to maintain the action, the judgment of the trial court denying the injunction will be affirmed." (p. 802.)

Counsel for appellants suggest that the rule stated in the case just cited no longer prevails. It is a sound and salutary one, and this court has never intimated that it disapproved of it. Indeed, the rule has been a familiar one in this jurisdiction throughout the judicial history of this state to the present time. In *Home Riverside Coal Mines Co. v. McAuliffe*, 126 Kan. 347, 267 Pac. 996, a taxpayer sought to enjoin the city officials of Leavenworth from entering into a contract for electric energy on the alleged ground of its invalidity. The city's demurrer on the ground that plaintiff had no legal capacity to maintain the action was overruled by the trial court. But this court held otherwise, saying:

"Early in the history of this state it was determined that '. . . . for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character. . . .' (*Craft v. Jackson Co.*, 5 Kan. 518, 521; and see *Clark v. George*, 118 Kan. 667, 669, 236 Pac. 543.) This principle applies not only in injunction, but in mandamus (*Bobbett v. State, ex rel. Dresher*, 10 Kan. 9; *Collingwood v. Schmidt*, 125 Kan. 81, 262 Pac. 556) and other forms of action, many examples of which are found in our reports." (p. 348.)

See, also, *City of Holton v. Jackson County Comm'rs*, 138 Kan. 163, 23 P. 2d 605.

The trial court's general finding was correct, and its judgment is affirmed.