No. 32,326

THE KANSAS ELECTRIC POWER COMPANY, G. C. HARTENBOWER, W. E. JANES, WILLIAM BAYS, BERTRAM JOHNSON, R. C. MORRIS, R. P. KELLEY, M. C. CARR, *Appellants,* v. THE CITY OF EUREKA, H. H. TROXELL, H. B. LAMB and W. H. HART, as Mayor and City Commissioners, and FAIRBANKS, MORSE AND COMPANY, *Appellees.*

(45 P. 2d 877)

Opinion filed June 8, 1935.

*Thomas C. Forbes, Carl C. Chase,* both of Eureka, and *Raymond F. Rice,* of Lawrence, for the appellants.

*J. F. Darby, Homer V. Gooing,* both of Eureka, *Conrad H. Poppenhusen, Edward R. Johnston, Floyd E. Thompson, Lawrence A. Cole,* all of Chicago, Ill., *Justin D. Bowersock, Robert B. Fizzell* and *John F. Rhodes,* all of Kansas City, Mo., for the appellees.

*Clarence V. Beck,* attorney general, and *Theo F. Varner,* assistant attorney general, for the State of Kansas, intervening appellant.

The opinion of the court was delivered by

DAWSON, J.: This was a taxpayers' suit to test the validity of a bond election and proceedings incidental thereto, under which the defendant city seeks to issue $65,000 in general obligation bonds to raise funds to construct a building designed to house engines and machinery for generating electricity and to construct an electric distribution system.

This case is a companion of No. 32,327, wherein these same taxpayers have challenged the legality of a contract between the city and Fairbanks, Morse and Company, for the purchase of electric generating engines and related machinery which, with the proposed distributing system, are to constitute a municipal light and power plant.

It appears that in 1933 the governing body of the city of Eureka determined to embark on the venture of a municipal power and light plant; and to accomplish that project they made a contract with Fairbanks, Morse and Company for the purchase of $99,974 worth of engines and related equipment, which contract was to be dependent on the result of a city election wherein the voters should be asked to sanction an issue of bonds in the sum of $65,000 to provide the remaining funds requisite to erect a building for housing the machinery and to construct the requisite poles, wires, transformers, and the like, for distributing electricity throughout the city.

Our present concern is with the regularity of the proceedings leading to the proposed bond issue.

On August 15, 1933, the city commissioners adopted an ordinance, No. 1341, calling a special election to be held on September 12, 1933, to vote on a proposition which should appear on the ballot thus:

"Shall the city of Eureka, Kansas, issue sixty-five thousand dollars in bonds, the same not to run longer than twenty (20) years, and to bear interest not

to exceed five (5) percent per annum and to be issued to mature in installments of approximately equal amounts each year, for the purpose of constructing an electric light distributing system, power-plant building and appurtenances thereto, for the purpose of supplying said city and its inhabitants with electric current for lighting, power and other purposes?"

The election was held as scheduled and the proposed bond issue carried by a substantial majority.

Shortly thereafter this action was begun. Plaintiffs alleged that the recitals on the election ballot were deceptive and misleading in that the voters were thereby led to believe that the proposed issue of $65,000 in bonds would give effect to the purposes stated on the election ballot, when in truth those purposes would necessitate an additional outlay of $99,974 or more, of which the electors were not apprised on the election ballot.

Plaintiffs' petition included a summarized statement of the contract with Fairbanks, Morse and Company for the purchase of the requisite engines and machinery to supply electricity for the distributing system; and it was alleged, among other matters, that the proposed undertaking as a whole would result in an illegal tax burden on the plaintiffs.

It was also alleged that during the campaign preceding the bond election the city officials and Fairbanks, Morse and Company published and circulated false and misleading statements for the purpose of prejudicing and influencing the voters of the city in their attitude towards the proposed bond issue.

Plaintiffs prayed that defendants should be enjoined from issuing the bonds and for general relief in equity.

The city and its officials answered jointly, and Fairbanks, Morse and Company answered separately. Each answer denied the alleged illegalities and irregularities pleaded in plaintiffs' petition.

At the trial certain more or less pertinent matters were submitted by agreement of counsel. It was shown that heretofore, and for some years past, the city and its inhabitants have been supplied with electric light and power by plaintiff, the Kansas Electric Power Company. A copy of the bond election ordinance, No. 1341, was introduced; the collateral but related matters of the contract for $99,974 worth of engines to be bought from Fairbanks, Morse and Company were introduced, and the city's plan to pay the purchase price thereof by an issue of "revenue certificates" payable out of the proceeds of sales of light and power.

It was shown that during the campaign preceding the election the mayor and city commissioners published a weekly journal or newspaper entitled "Eureka Municipal Light Plant News, edited by the city commissioners of Eureka," which contained extravagant statements of the benefits to be derived from the establishment of the proposed municipal light plant, and emphasized the supposed fact that the plaintiff power company, through its rate exactions, was gathering tribute from its patrons in Eureka to pay a pension to the noted or notorious Samuel Insull, a financial wizard who at the time had found an asylum in the country of Greece in evasion of extradition process from the United States. Another false statement put forth by the defendants in the "Eureka Municipal Light Plant News" read:

"All rates will be reduced at least 25 percent and will be published before election."

It was testified to and admitted by the defendant commissioners that some city funds and the city's credit were used to conduct this preëlection campaign; and when the contract was negotiated between the city and Fairbanks, Morse and Company, the mayor said to its representative, L. W. Rader, "Say, it will cost something to put this election over, and we are going to expect you to bear your share of it." Rader replied, "No, they [Fairbanks, Morse and Company] won't do that." The mayor said, "How about you chipping in a little, Mr. Rader, yourself?" Rader replied, "I might help out a little." Rader contributed $55 toward the campaign expenditures, $5 of which he paid before the election and $50 after the election was held. Most of these election expenses, of which there seems to have been considerable, were paid for or charged against the general fund of the city.

The trial court, both judges sitting, gave judgment for defendants.

Plaintiffs appeal, presenting certain legal questions for review.

Touching first upon the activities of the mayor and city commissioners in the preëlection campaign, persons who happen to hold city offices in their private capacity as electors are as free as other people to advocate their opinions. But as public officials they should maintain a reasonable semblance of neutrality. Here, however, as there was no showing that the officiousness and other irregularities attributed to the mayor and commissioners were so potent as to have turned the scales at the election, nor any likelihood that their delinquencies did have such a result, it cannot be

held that the election was vitiated thereby. (*State, ex rel. Ayres, v. Stockwell*, 7 Kan. 98, 102; *Tarbox v. Sughrue*, 36 Kan. 225, 12 Pac. 935; *State, ex rel., v. Comm'rs of Seward Co.*, 36 Kan. 236, 245, 13 Pac. 212.)

In *Humphrey v. City of Pratt*, 93 Kan. 413, 144 Pac. 197, it was said:

"The issuance of bonds voted at a city election to build a municipal light plant cannot be enjoined because the election was carried by false representations by agitators. . . . (Syl. ¶ 3.)

"Unscrupulous campaign methods must be met in some other way than by an action to enjoin issuance and sale of the bonds." (p. 416.)

See, also, *City of Oswego v. Davis*, 97 Kan. 371, 374, 154 Pac. 1124.

In what we have just said the court must not be understood as giving countenance to the conduct of the city officials, particularly in respect to their expenditure of city funds for preëlection campaign purposes. That, however, is the concern of the county attorney; not at this time any concern of this court.

On the question whether the proposition which appeared on the ballot, and on which the electors of Eureka were asked to express their wishes at the ballot box, was misleading, it seems that the point raised by plaintiffs is well taken. The fair import of the recitals on the ballot was that the $65,000 bond issue which the voters were asked to sanction would provide the requisite funds to procure the desired municipal light and power plant. It may be conceded that a critical analyst of language construction could make a specious argument that the recitals on the ballot only meant that the cost of a distributing system and the cost of a power plant building were to be met out of the bond issue; and that the words "appurtenances thereto" referred to appurtenances restricted to the distributing system or to the power plant building or to both, but did not mean appurtenances to the power plant. But the election was held to take the opinion and judgment of common men and women who are not trained in the niceties of language; and it is undeniable that the concluding language of the ballot, "for the purpose of supplying said city and its inhabitants with electric current for lighting, power and other purposes," not only would lead the voters to assume that was exactly what they were voting for, but would tend to obscure the idea that it was only a part of a municipal plant they would get for their bond issue.

Our election laws contemplate that when a special proposition is submitted the ballot shall clearly state the substance of the proposition. If the proposition on the ballot is stated in equivocal terms the purpose of the election is vitiated in advance. (R. S. 25-605; R. S. 10-120; *Leavenworth v. Wilson,* 69 Kan. 74, 76 Pac. 400; 44 C. J. 1138.)

Our reports contain cases where want of clarity in the recitals of ballot propositions and other nonconformities in election matters have been held insufficient to vitiate the election (*State, ex rel., v. McCombs,* 129 Kan. 834, 842, 284 Pac. 618, and citations), but nothing in any of these has modified the rule announced in *Leavenworth v. Wilson,* supra.

It was urged in defendants' brief that plaintiffs did not have legal capacity to maintain this action. That point was not raised in the pleadings of defendants. The action was clearly maintainable by plaintiffs under R. S. 60-1121. On the possibility that the merits of the appeal might fail for want of a proper party to challenge the legality of the proposed bond issue, or to question the soundness of the judgment below, the attorney general entered an appearance in this court, invoking a conclusive determination of the vital questions concerned.

This court holds that the election ballot did not clearly and unequivocally state the proposition the electors of the city of Eureka were called upon to vote. The result is the election was a nullity; and bonds of the city could not lawfully be issued under its sanction.

The judgment is reversed and the cause remanded with instructions to enter judgment for plaintiffs.