No. 32,327

The Kansas Electric Power Company, G. C. Hartenbower, W. E. Janes, William Bays, Bertram Johnson, R. C. Morris, R. P. Kelley and M. C. Carr, *Appellants*, v. The City of Eureka, H. H. Troxell, H. B. Lamb and W. H. Hart, as Mayor and City Commissioners, and Fairbanks, Morse and Company, *Appellees*.

(45 P. 2d 880)

Opinion filed June 8, 1935.

*Thomas C. Forbes, Carl C. Chase,* both of Eureka, and *Raymond P. Rice,* of Lawrence, for the appellants.

*J. P. Darby, Homer V. Gooing,* both of Eureka, *Conrad H. Poppenhusen, Edward R. Johnston, Floyd E. Thompson, Lawrence A. Cole,* all of Chicago, Ill., *Justin D. Bowersock, Robert B. Fizzell* and *John F. Rhodes,* all of Kansas City, Mo., for the appellees.

*Clarence V. Beck,* attorney general, and *Theo. F. Varner,* assistant attorney general, for the State of Kansas, intervening appellant.

The opinion of the court was delivered by

Dawson, J.: This was a taxpayers' suit under R. S. 60-1121 to enjoin the city of Eureka and its governing officers from carrying into effect the provisions of a certain ordinance and agreement whereby the city binds itself to issue to Fairbanks, Morse and Company certain written instruments, to be designated "revenue certificates," payable in sixty monthly installments, with interest, and aggregating the sum of $99,974, which was the agreed price of three Diesel engines and other specified .machinery to provide motive

power for a municipal light and power plant which the governing body of the city had determined to constuct and operate.

Ancillary to the execution of this contract is the proposed execution and sale of $65,000 in bonds voted by the city to provide funds to erect a building to house the proposed power plant and to construct a distributing system consisting of the usual poles, wires, transformers, etc., throughout the city. The regularity of that bond election and the validity of that proposed bond issue are the subject matter of the appeal in a companion case, No. 32,326, decided at this term.

A comprehensive view of the legal questions raised against the contract and which constitute the crux of this lawsuit will require the circumstances as well as the specific terms of the challenged contract to be stated at some length:

The city of Eureka is a city of the second class. In 1933 its governing body, Troxell, mayor, and Lamb and Hart, commissioners, determined to launch the city into the adventure of municipal ownership and operation of a light and power plant. To that end they planned a complete plant which would cost $164,974, of which amount the sum of $65,000 should be derived from a bond issue to be sanctioned by a popular election, and the balance, $99,974, should be met by an issue of sixty monthly installment certificates payable to the defendant, Fairbanks, Morse and Company, for the purchase of engines and related machinery suitable for generating electricity in the sort of municipal plant to be constructed in Eureka. These proposed certificates were to be paid out of specified revenues of the power plant when constructed and in operation. Whether the foregoing estimated cost, without any further direct or indirect burden on the general taxpayers, would attain the object desired by the defendant city and its officials is not a question of present judicial concern. What does require judicial determination is the legality of the contract as a whole; and if legal in its main aspects, whether it does not transcend the authority of the city or offend against public policy in some of its details.

In the contract with Fairbanks, Morse and Company, the city, in summary, agrees:

(1) To erect a building to house the power machinery and to pay for the common labor, cartage, and materials.

(2) To pay all freight and other charges.

(3) To commence payment of stipulated monthly installments of the pur-

chase price of the engines and related equipment, $99,974, with interest at six percent per annum, within sixty days after they are delivered, installed and satisfactorily tested, and to continue such payments monthly for five years.

(4) The monthly installments shall be evidenced by sixty "revenue certificates" payable out of the revenues of the plant, and "are not general obligations of the municipality payable out of taxes or its general funds"; but the city agrees to maintain light and power rates which will produce sufficient funds to pay these revenue certificates "so far as it may be permitted to do so by law."

(5) To pledge the entire proceeds of the plant to the payment of the monthly installments, after deduction of "legitimate and necessary expenses of operation, which shall include the interest and principal of the proposed bond issue of $65,000 as they mature."

(6) To operate the proposed municipal plant and not dispose of it until all the city's obligations to Fairbanks, Morse and Company are discharged.

(7) That the title to the engines and related machinery supplied by Fairbanks, Morse and Company shall remain in the vendor, notwithstanding its structural emplacement in the power plant building, until the vendor is paid in full; but meantime the city agrees to pay the taxes on the property and to keep it insured for the benefit of the vendor.

(8) That Fairbanks, Morse and Company shall not be liable for any damages of any character arising from the use of the machinery, but it will replace defective parts within a stated time and upon certain conditions.

(9) That for any delays in the installation of the engines and machinery, caused by the city, it shall pay the company's engineer $12.50 per day and expenses.

(10) When the engines and machinery are installed, and when the distributing system is constructed out of the proceeds of the proposed $65,000 bond issue, a test of the completed plant is to be made, and the engineer of Fairbanks, Morse and Company "shall have entire charge thereof . . . During . . . such test the engineer of the company shall be considered to be the agent of the municipality." If no test is desired by the city or if such test cannot be properly made through any fault of the city, then the guarantees of duty touching the efficiency of the machinery "shall be null and void and the company not bound thereby, and said machinery shall then be considered accepted by the municipality."

(11) If litigation should arise between the city and the company out of any breach of this contract, notwithstanding any judgment ensuing therefrom "the title to the machinery or materials shall not pass until such revenue certificates so given, or extensions thereof, or such judgment taken, are fully paid in money and satisfied. The company shall have the right to discount or transfer any of said revenue certificates, and the title or right of possession in and to said machinery or materials shall pass thereby to the legal holder of such revenue certificates.

"The said machinery or materials shall be and remain strictly personal property and retain its character as such, no matter whether on permanent foundation or in what manner affixed or attached to any building or structure.

or what may be the consequences of its being disturbed on such foundation, building or structure, or for what purpose the machinery or materials may be used."

The contract which the city and Fairbanks, Morse and Company have signed and under which defendants propose to proceed is not precisely the same as it appeared in the ordinance which sanctioned its execution. There has been added thereto the following:

"The amount of any present or future sales or other tax, federal or state, which the manufacturer (seller) now or hereafter shall be required to pay, either on its own behalf or on behalf of the purchaser or otherwise with respect to the material covered by this quotation, shall be added to the prices contained herein and paid by the purchaser in the same manner and to the same effect as if originally added thereto."

The issues between the litigants were developed by appropriate pleadings; certain stipulations and uncontroverted evidence were adduced to develop all the pertinent facts; and judgment was entered for defendants.

Plaintiffs appeal. They contend that the city had no power to make the contract; if any statute conferred such power, the contract which was made contained an important paragraph not included in the contract terms as they appeared in the city ordinance which was published; that the preliminary estimate of the cost of a municipal plant was a farce; that the contract creates a debt in disregard of the budget law; that the contract unlawfully assumes to control the future action of the city and defendants' successors in office; that it binds the city to operate the proposed plant for a fixed period when the statute authorizes a city to quit the utility business whenever it chooses to do so; that certain details of the contract touching payment of taxes and insurance on the property of the vendor and relieving it of its common-law liability are against public policy and otherwise void.

On behalf of defendants it is contended that R. S. 12-842 is all the authority the city needs to sanction the contract between Fairbanks, Morse and Company and the city; that the authority to raise funds for the acquisition of the proposed light and power plant, or part of such equipment, is not restricted to the statutory method provided by R. S. 12-843. This question has been considered in a case essentially similar in its controlling aspects to the one at bar, *Kansas Power Co. v. Fairbanks, Morse & Co.*, ante, p. 109, 45 P. 2d 872. It is there held that where a city does not have the money to construct or otherwise acquire a municipal light and

power plant, the means provided by the statute R. S. 12-843 is exclusive, and that the ingenious scheme of paying for it by issuing installment obligations, termed "revenue certificates," payable monthly for the next five years out of expected net revenues of the utility, is wholly unauthorized by law and cannot have the sanction of judicial approval.

It is needless to repeat here what we have just written in the Glen Elder case. In this case it was stipulated in the contract that it would be called off unless a proposed bond issue which was an essential feature of the project to procure a light and power plant for the city should successfully run the gauntlet of the electorate of Eureka. Necessarily the contract would also have to pass judicial scrutiny. In the companion case having a similar title to the one at bar, No. 32,326, *ante*, p. 117, 45 P. 2d 877, this day decided, it is held that the bond election was a nullity because of the uncertain and equivocal language of the proposition on the ballot on which the popular vote was taken.

It follows that other features of the contract vigorously assailed by plaintiffs and as valiantly upheld by defendants, with an unusual exemplification of lawyerlike scholarship in the briefs and arguments of counsel for the respective parties, do not require determination at this time.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for plaintiffs.