No. 32,991

FRED ROBERTSON, and THE WYANDOTTE LOAN AND INVESTMENT COM-
PANY, *Appellants*, v. THE CITY OF KANSAS CITY, DON C. MC-
COMBS, as Mayor-commissioner, et al., *Appellees*.

(56 P. 2d 1032)

Opinion filed April 25, 1936.

*Edward M. Boddington* and *J. O. Emerson,* both of Kansas City, for the appellants.

*Alton H. Skinner,* city attorney, *John C. O'Brien,* first deputy city attorney, *William H. Towers, Joseph A. Lynch* and *Clarence A. Mott,* all of Kansas City, for the appellees.

*Edwin S. McAnany* and *A. L. Berger,* both of Kansas City, *as amici curiae.*

The opinion of the court was delivered by

THIELE, J.: Plaintiffs appeal from the decision of the district court refusing to enjoin the issuance of general obligation bonds of the defendant city, authorized by a vote of the electorate, and to be issued to pay a portion of the cost of improving the public levee in that city, and refusing to enjoin the performance of certain contracts

between the defendant city and the individual defendants for the erection of improvements on the levee.

As to the principal facts there is no dispute. The governing body of the city will be referred to as the city. On March 5, 1935, the city passed an ordinance calling a special election on April 2, 1935, to vote bonds to raise money for the purpose of improving the public levee, the enacting clause and the body of the ordinance specifying the purpose for which the bond moneys were to be used in substantially the same language as is contained in the proposition submitted as hereafter quoted. The ordinance provided for giving of notice of election signed by the mayor and city clerk and that the election should be held at the several voting places designated and provided by law. The ordinance had a preamble of seventeen whereas clauses, which will be hereafter referred to. Thereafter notice was given in accordance with the ordinance. The date of the special election was the same date as the general city election and the election boards at the general city election functioned as the election boards at the special election. The ballot used contained the following proposition:

"Shall the following be adopted?

"A proposition to vote bonds in the amount of three hundred thousand ($300,000) dollars, to raise money for the purpose of improving the public levee of the city by constructing flood protection works, raising the surface thereof, and the construction thereon of docks, wharves, river and rail terminals and a grain elevator terminal dock and wharf to make the public levee of the city convenient, useable and accessible for use in connection with water transportation on the Missouri and Kansas rivers adjoining said levee, the proceeds of said bonds to be used only when used in coöperation and conjunction with other funds advanced for such purposes by the United States of America.

"To vote in favor of the bonds make a cross × mark in the square after the word 'yes.'                                                    Yes ☐
"To vote against the bonds make a cross × mark in the square after the word 'no.'                                                       No ☐"

The result was a vote of 21,287 for the bonds and 18,018 against the bonds, or a total of 39,305 votes. At the general city election, there were 39,904 votes cast for candidates for mayor.

On May 14, 1935, the city adopted a resolution authorizing the mayor and the city attorney to negotiate with the public works administration for a loan and grant from the United States. It may here be observed that a previous negotiation resulted in an agreement which this court held to be unauthorized. (See *State, ex rel.,*

*v. Kansas City,* 140 Kan. 471, 37 P. 2d 18.)   An agreement having been reached with PWA, on August 8, 1935, the city passed an ordinance declaring it necessary in the public interest to immediately develop the public levee for levee purposes, and authorizing the mayor on behalf of the city to enter into a loan and grant agreement with the United States.   The agreement provides for a loan and grant not exceeding $1,456,000; that the government will buy bonds at principal amount of $1,054,000, and will make a grant of $482,000. We need not now notice the further details of this contract.   On January 30, 1936, the city determined the Morrison-Glasscock-Connor Company was the lowest bidder for construction of a pile foundation for a grain elevator terminal dock on the levee, and that it be awarded the contract for construction thereof upon giving bond and upon approval by the PWA.   In the latter part of January and the early part of February, 1936, ordinances were passed providing for leases to various persons and corporations for use of parts of the levee or the improvements thereon.   On February 11, 1936, the city passed an ordinance directing the issuance of the $300,000 general obligation bonds authorized at the election of April 2, 1935.   On February 14, 1936, this action was filed in the district court, the petition alleging twenty-five paragraphs of reasons why plaintiffs claimed the election and subsequent proceedings were illegal and void.   The city's amended answer admitted many allegations of fact pleaded in the petition, alleged the petition did not state facts sufficient to constitute a cause of action, and denied facts not admitted.   After a trial, the court denied the relief prayed for by plaintiffs, rendered judgment in favor of the defendants, and the plaintiffs appeal.   We have been favored with over 350 pages of brief by appellants, appellees and *amici curiae,* and while there is much interesting discussion therein, not many points are discussed which need any considerable treatment herein.

The first and principal point argued by appellants is that the election proclamation and the proposition as submitted on the ballot are fatally defective in that the electorate was not advised that the total cost of the improvement was to be $1,756,000, the only sum mentioned being the amount of the bonds to be issued, *i. e.,* $300,000, and that therefore the election and subsequent proceedings are invalid, the appellants in support relying upon our recent decisions in *City of Iola v. Hobart,* 141 Kan. 709, 42 P. 2d 977; *Kansas Electric Power Co. v. City of Eureka,* 142 Kan. 117, 45 P.

2d 877, and *Board of Education v. Powers,* 142 Kan. 664, 51 P. 2d 421. The cases do not support the contention. The Iola case was in mandamus to compel execution of the contract for construction of a swimming pool. There the election proclamation called for issuance of bonds in the sum of $30,000 to provide funds, while the proof showed that cost of site plus the cost of construction, all contemplated in the proposition submitted, would exceed $46,000. The Eureka case was for an injunction which was granted by the trial court. We reversed, holding the notice of election to vote bonds in the sum of $65,000 for construction of an electric-lighting system, power-plant building and appurtenances thereto, did not disclose to the electorate that although part of the same improvement, the city had by separate contract provided for an additional outlay of over $99,000 for equipment, to be evidenced by so-called "revenue certificates.". The Board of Education case was in mandamus and we refused the relief prayed on the ground the resolution for erection of a school building contemplated the use of a large grant from the United States, called for an election for bonds of about half the amount to be expended, but did not advise the electorate thereof either in the notice calling the election or in the propostion submitted on the ballot.

In the case at bar, we have no such situation. It is probably true that when the city passed the ordinance calling the election and when the election was held, it hoped to be able to get about as favorable a loan and grant agreement with the PWA as it had in the contract which we held unauthorized, but that was hope only and not fact. The notice of the election and the ballot both included these words:

"The proceeds of said bonds to be used only when used in coöperation and conjunction with other funds advanced for such purposes by the United States of America."

Of course, it would have been possible to have stated more fully the plan of the city, to have said that if a loan and grant agreement for a specified amount were not made the bonds should not be issued, or to have included other clauses of condition, but we think it clear from the proposition as submitted that the voters were informed the proceeds of the bonds, if issued, would be used only when there was financial coöperation between the city and the United States.

We note criticism of the seventeen whereas clauses of the ordi-

nance calling the bond election. We need not examine these clauses to determine their literal correctness, or lack of it, nor whether they served a useful purpose in the ordinance or were, as appellants urge, propaganda. The criticism is coupled with argument as to whether in aid of the election notice the ordinance may be given the force of public law. (See *Board of Education v. Powers,* supra, and cases cited.) We express no opinion as to whether such a principle may be applied, it not being necessary in this case to resort thereto. The election proclamation and the proposition stated on the ballot are sufficient in and of themselves so that no resort need be made to the ordinance calling the special election.

It is next urged that more than one proposition was submitted, and some semblance of plausibility is given this argument because the election proclamation contained a statement the different propositions should be separately numbered and printed on the ballot. Just why such inept language was used we do not know, but a mere reading of the election proclamation and of the ballot shows it was intended to improve the public levee by the doing of certain things, all of which were related to one another, and any of which would be more or less useless without the others. The question whether a notice of special election submitted more than one propostion was discussed in *Pittsburg Board of Education v. Davis,* 120 Kan. 768, 245 Pac. 112, to which reference is made. Without further discussion, we hold that in the election proclamation and on the ballot used only one proposition was submitted and there was no need for division.

In 1929 the legislature enacted the Laws of 1929, chapter 115 (R. S. 1933 Supp. 12-672, 12-673), authorizing any city to construct, maintain, operate and lease out docks, wharves and river terminals, and to issue general obligation bonds for that purpose. At the special session in 1933, chapter 33 (R. S. 1933 Supp. 12-674), was enacted authorizing cities to coöperate with the federal government in making public improvements. At the same special session, chapter 43 (R. S. 1933 Supp. 13-1238 to 13-1245, inclusive) was enacted. It authorized cities having a population of over 115,000, in manner and form provided, to secure funds for improving and constructing public levees, docks, wharves, river terminals, grain elevator terminal docks, etc. The last section of the act provided the powers granted are supplemental to certain acts, including R. S. 1931 [1933] Supp. 12-673, and not a modification thereof. Appellants contend

that the proposed improvements must be made under one act or the other, that they must be fully paid for either by general obligation bonds, or by revenue bonds, and that an improvement cannot be made, the cost of which is to be met from both sources. We are of the opinion that such a construction of the statute would ignore the express statement in R. S. 1933 Supp. 13-1245 that the powers granted in the revenue bond act were supplemental to R. S. 1931 [1933] Supp. 12-673 pertaining to general obligation bonds, and that the legislature meant both sources of revenue could be used to carry out one improvement.

As previously indicated, many reasons were alleged in the plaintiffs' petition why the special bond election is not valid. We have examined those not herein discussed and find they are without merit, or are not sufficient to warrant injunctive relief.

Appellants also stress claimed illegality of contracts made by the city for the improvement of the levee, or the use of it as improved. In their petition, it is alleged the doing of these acts is not authorized by law and may result in creation of a public burden and the levy of illegal taxes. There is no allegation that plaintiffs will be harmed in any manner different from the public at large. While testimony was taken showing the various acts and contracts complained of, there was no showing in the evidence that plaintiffs would have their tax burdens increased. Their apprehension that such a result would follow depends on events which may or may not occur. In any event, by reason of statutory provision (R. S. 1933 Supp. 13-1238 to 13-1245, inclusive), their tax liability on account of improving the public levee is limited to payment of principal and interest of the $300,000 general obligation bonds, and under this decision those bonds were lawfully authorized. There was no showing appellants would sustain any special damages and different in kind from the public generally. Appellees urge that in such case appellants may not maintain an action for injunctive relief. We agree. The question raised has been before this court many times, and it has been repeatedly held the only proper plaintiff in an action for injunctive relief against abuse of power by municipal officers is the state, or one of its officers charged with responsibility of scrutinizing the acts of public officers and boards. (See *Warner v. City of Independence,* 121 Kan. 551, 247 Pac. 871; *Grecian v. Hill City,* 123 Kan. 542, 256 Pac. 163; *Home Riverside Coal Mines*

*Co. v. McAuliffe,* 126 Kan. 347, 267 Pac. 996; *Young v. Washington County Comm'rs,* 127 Kan. 227, 273 Pac. 398; *State, ex rel., v. City of Newton,* 138 Kan. 78, 23 P. 2d 463; *City of Holton v. Jackson County Comm'rs,* 138 Kan. 163, 23 P. 2d 605; *Rodenbeck v. Darby,* 139 Kan. 759, 33 P. 2d 306; *Kansas Utilities Co. v. City of Burlington,* 141 Kan. 926, 44 P. 2d 223.) And many others of like effect may be found in our decisions.

It has not been made to appear the trial court erred in refusing appellants' prayer for injunctive relief, and its judgment is affirmed.

Owing to the public interest involved, it is ordered that if no petition for rehearing be filed within ten days the mandate of this court shall immediately thereafter be issued to the trial court.