No. 33,431

The Kansas Power Company, *Appellant*, v. The City of Washington, Washington.County, and City Officials, *Appellees* and *Cross-appellants*.

(67 P. 2d 1095)

filed May 8, 1937. Opinion

*B. I. Litowich,* of Salina, *Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellant.

*Farel R. Lobaugh,* of Washington, *Ralph T. O'Neil, J. D. M. Hamilton, Barton E. Griffith* and *Peter F. Caldwell,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: Plaintiff brought this action to enjoin the city of Washington from issuing bonds in the sum of $88,000, which the electors of the city had voted for the purpose of constructing a municipal light and power plant. Certain public officials were impleaded in the action on account of their official concern in the litigation.

In plaintiff's petition it was alleged that ever since 1917, under

lawfully granted franchises, it and its predecessors in title had been generating and selling electric energy for all domestic and industrial purposes to the defendant city and its inhabitants, and had been rendering efficient and sufficient service to its patrons in that community.

It was alleged that in August, 1933, for the intended purpose of depriving plaintiff of its rights and franchises in the city of Washington, the governing body passed an ordinance, No. 357, for the purpose of calling an election to authorize a bond issue, "for the avowed and threatened purpose of erecting an electric power plant and distribution system in said city to serve it and its inhabitants with electric light and power in competition with this plaintiff."

It was also alleged that such an election was called and held on September 12, 1933; that 506 votes were cast in favor of the proposed bond issue and 254 votes were cast against the proposal.

Plaintiff also pleaded certain alleged defects and illegalities in the election proceedings, to wit:

1. The election notice was not signed by a majority of the members of the governing body of the city, but only by the mayor and city clerk.

2. The proposition on which the electors were called to vote was ambiguous and misleading and did not fairly state the purpose of the proposed bond issue.

3. The city intended to make contracts for the construction of the proposed plant which would aggregate $50,000 more than the amount which could be realized from the sale of the $88,000 bond issue.

4. The city intended to use part of the proceeds of the bond issue to purchase land on which to erect the proposed municipal plant, and that such project was not within the legitimate scope of the objects for which the bonds were voted.

5. That the city was misled and deceived by a firm of engineers whom it employed to make an estimate of the cost of a municipal plant to serve the needs of the city and its inhabitants; that such firm's estimate was $88,000, but such a sum was and is grossly inadequate.

6. That in more than two and a half years which have elapsed since the bond issue was voted, nothing has been done to construct the projected municipal plant; and meantime prices of materials have increased, rate charges for electric energy have declined; and

by reason of lapse of time and changed conditions "the pretended election proceedings have totally lost their force and effect, and the governing body of said city is now without right to proceed under such pretended authority."

7. The projected municipal plant would be operated under the city's proprietary capacity, in which its corporate duty is governed by the provisions of the public utilities act, and the city has not procured a certificate of convenience and necessity from the state corporation commission to engage in the business of supplying electric light and power to the public in the city of Washington.

Plaintiff further alleged—

"That the construction, maintenance and operation of a municipal light plant by said defendant city . . . will destroy plaintiff's business and confiscate its property by greatly depreciating the actual and usable value thereof, all in violation of the laws and constitution of the state of Kansas, and the constitution of the United States . . . it will depreciate the usable value not only of the property of the plaintiff situated in the city of Washington, but will likewise depreciate the usable value of its transmission lines used for the service of other towns served by said company near the community of Washington, Kan., for the reason that the plaintiff will be required to continue to own and operate said transmission line for the service of other cities, and will thereby suffer a severance damage which because of peculiar and varying factors which enter into the amount of such damage is incapable of certain ascertainment. The plaintiff, after the installation and during the operation of said municipally owned electric plant in said city of Washington, Kan., cannot continue to serve its customers in the cities, towns and communities in and near Washington, Kan., at presently existing rates, but on the contrary, in order to operate that part of its system without loss, will be obliged to charge higher rates for its service to such customers, all to the damage and detriment of the plaintiff and of such customers; that the establishment of such plant at Washington, Kan., for the purpose of competing with the system owned and operated by the plaintiff, or to cause the plaintiff to cease operations in said city, is contrary to public policy, and contrary to the policy of the lawmaking body of the state of Kansas."

Plaintiff concluded with an allegation that it had no adequate remedy at law, and prayed for injunctive relief.

In a supplemental petition plaintiff amplified some of its allegations, and alleged that the city had published an ordinance, No. 357, authorizing the issuance of general obligation bonds of the city in the sum of $88,000 to finance the construction of the projected municipal plant, but that this ordinance was not adopted and published in conformity with law, and that—

". . . same was passed and published as a part of a plan and scheme of said city and its governing body to create an unlawful general obligation upon

said city and the taxpayers therein, including this plaintiff, and said city and its governing body now, as a part of said plan and scheme, intend, threaten to and will, unless enjoined, cause the bonds of said city to be actually issued . . . and the sale of said bonds will create an unlawful general obligation against said city in the principal amount of $88,000; will take, impair, deprive and confiscate the property of this plaintiff, and will impair the obligation of the contracts between said city and this plaintiff, and devaluate and confiscate the property of the plaintiff. . . ."

In its answer the city admitted certain noncontroversial facts alleged in plaintiff's petition, traversed others it deemed material, recited with particularity certain official actions taken by the governing body and the dates thereof, and set out the proposition on which the people were called to vote as stated in the city ordinance No. 357 and as it appeared on the official ballot at the election held on September 12, 1933, as follows:

"Shall the following be adopted?

"Shall the city of Washington, Kansas, issue $88,000 in bonds, the same to run not longer than twenty years and to bear interest not to exceed five percent per annum and to be issued to mature in installments of approximately equal amounts each year, for the purpose of erecting an electric distributing system, power plant building, and appurtenances thereto, for the purpose of supplying said city and its inhabitants with electric light and power."

In a supplemental answer defendants pleaded the facts of earlier litigation in the United States district court touching the validity of the proceedings pertaining to the proposed bond issue; that the city prevailed in that litigation in that court and also in the United States circuit court of appeals; and that the United States supreme court had denied an application of the city's adversary for a writ of certiorari. Attached to this supplemental answer was a copy of the opinion of the circuit court of appeals (*West Missouri Power Co. v. City of Washington*), reported in 80 F. 2d 420, together with a copy of the transcript of that suit in the United States district court.

In the trial which followed the court made findings of fact and conclusions of law whose general tenor was favorable to defendants, and judgment was entered accordingly.

Plaintiff appeals, urging various errors which will be considered in the order of their presentation.

It is first contended that the city is without right to issue bonds to erect an inadequate municipal light and power plant.

Who is to decide whether a proposed municipal utility will be adequate to serve the municipality? Is that a justiciable question to be decided on the opinion testimony of expert witnesses? Where

shall we find in the lawbooks any sanction for the substitution of the judgment of a judicial tribunal for that of an administrative tribunal on such a question as the requisite capacity of a proposed municipal utility to serve the needs of the community? No such case is cited. The nearest analogous cases in our own reports are the paving cases. In *Fairchild v. City of Holton,* 101 Kan. 330, 166 Pac. 503, taxpayers sought to enjoin the paving of three blocks of a street on various grounds, one of which was that the paving was unnecessary. The trial court found otherwise, and made a finding that the best interests of the city would be served by paving the three blocks in controversy. In affirming the judgment, this court said:

"That was further than the court needed to go, for that matter was vested in the city and not in the court, and so long as the court failed to find that the city had abused its power, there could be no judicial interference, even if the court itself had thought the paving unnecessary." (p. 333.)

In *Warner v. City of Independence,* 121 Kan. 551, 247 Pac. 871, the action was by taxpayers to challenge the regularity of certain proceedings undertaken by the city to pave a street and highway. In the petition, among other matters, it was alleged that the city's plan for the improvement of the street and road was ill-advised, that the quality of the materials to be used was poor, and that the proposed improvement—

"'Would only result in said street having to be repaved within five years, and that to proceed to pave said street in such a manner would be to deprive the taxpayers in the benefit district and in the city and county at large of their property in the way of taxes.'" (p. 555.)

The trial court ruled that it had no jurisdiction "to hear and determine the kind or quality of paving." On appeal this court said:

"We note what plaintiffs have to say about defendants' plans and specifications for the improvement. It will be a pity, indeed, if plaintiffs' prophecy comes true that the specifications are so defective that the street and road will have 'to be repaved within five years,' but discretion and responsibility on such matters must be vested somewhere. Under this statute they are vested in the city and county governing bodies, not in these plaintiffs, and not in the courts. The courts cannot interfere with the exercise of that discretion and responsibility where, as here, no substantial showing of fraud is disclosed by the record." (p. 558.)

In *State, ex rel., v. Younkin,* 108 Kan. 634, 639, 196 Pac. 620, where the acts of public officials in respect to road building were called in question, this court said:

"When the legislature confers power in general terms upon an official body,

without prescribing the details for the exercise of that power, the courts will not be officious to interfere with the official body's discretionary methods of performing the public duty intended by the legislature in granting such powers."

In 32 C. J. 260-261 it is said:

"A court of equity will not interfere with the exercise of discretionary powers on the part of a municipal corporation or its officers so long as the limits of those powers are not exceeded, and no fraud, malice, bad faith, or improper motives are shown, for otherwise this would be an assumption by the court of the right to exercise the powers delegated only to the corporation or its officers. The court has no authority to enjoin the corporation from doing what the law authorizes it to do. So long as they have acted honestly, the fact that a mistake has been made in the exercise of this discretion, or that the acts are hasty and ill-advised and not for the best interests of the inhabitants, constitute no ground for an injunction. . . . It is only where it is clearly shown that the municipal corporation or its officers has transcended the powers vested in them, or that there has been an abuse of discretion, that a court of equity will interfere."

To the same general effect were *Hessin v. Manhattan*, 81 Kan. 153, 105 Pac. 44; *Stevenson v. Shawnee County*, 98 Kan. 671, 678, 159 Pac. 5, and syl. ¶ 5. (See, also, *State, ex rel., v. Board of Education*, 122 Kan. 701, 253 Pac. 251.)

Incidental to appellant's contention which we have just considered, it is also urged that the court erred in its refusal to make a finding of fact on the question whether the proposed municipal plant would be adequate to serve the needs of the city and its inhabitants. As we have seen, however, the adequacy of the plant was not a justiciable question between plaintiff and the city, so the trial court's failure to make a finding of fact on this point was not error.

Plaintiff next contends that it was entitled to an injunction as a taxpayer because the governing body was induced to inaugurate the proceedings looking to the establishment of a municipal power plant by misrepresentations of fact and fallacious estimates of the cost of such a plant submitted to the city by a private firm of engineers. To this contention there are at least two answers. This record does not demonstrate that the estimates were fallacious, nor that the advice of the engineers who enjoyed the confidence of the city officials was false. Furthermore, the validity of proceedings undertaken by statutory authority cannot be judicially set at naught because public officials and the electors for whom they act may have been overpersuaded by false or fallacious arguments to adopt the course of action they eventually chose to pursue. In *City of Oswego v. Davis,*

97 Kan. 371, 154 Pac. 1124, a proposed bond issue was challenged on the ground that the city and its officials had been misled as to the amount of bonds it would require to extend and improve the municipal water plant. This court held that the point did not present a justiciable question. We said:

"But this objection is no more true as to a bond election than to any other election. In any free government the wise and the foolish, the vain and the venal, the radical and the conservative, may and do exercise the liberty of persuading their fellows to adopt their views; and all sorts of reasons, logical and illogical, serious, trivial and absurd, are given by electioneering advocates in their endeavors to win the support of the voters. A bond election in Oswego is no more likely to be illegally affected by the misrepresentations, wheedling, or cajolery. of the promoters of the bond issue than are elections elsewhere or on any other proposition submitted for the suffrage of the people." (p. 374.)

In *Detroit United Railway v. Detroit*, 255 U. S. 171, 65 L. Ed. 570, 41 S. Ct. 285, the action was for an injunction to prevent the city of Detroit from issuing bonds for the purpose of acquiring or constructing a municipal railway system. In the opinion the court said:

"The bill abounds in allegations that voters were misled by the fraudulent conduct of the officials of the city in their efforts to procure the property of the complainant at less than its value by misrepresenting in a circular, and otherwise, the purpose and effect of the vote to be taken upon the question of acquiring a municipal system of transportation. We think that the court below correctly held that the motives of the officials, and of the electors acting upon the proposal, are not proper subjects of judicial inquiry in an action like this so long as the means adopted for submission of the question to the people conformed to the requirements of the law. The principle has been declared by this court. (*Angle v. Chicago, St. Paul &c. Ry. Co.*, 151 U. S. 1, 18; *Soon Hing v. Crowley*, 113 U. S. 703, 710.)" (p. 178.)

(See, also, *Humphrey v. City of Pratt*, 93 Kan. 413, 416, 144 Pac. 197, and syl. ¶ 3.)

The foregoing authorities likewise effectively dispose of plaintiff's third contention that the $88,000 bond issue was not duly authorized because of the alleged misinformation supplied to the electors concerning the character and cost of the contemplated municipal plant. Counsel for appellant cite the case of *Mississippi Power Co. v. City of Starkville*, 4 F. Supp. 834, where the suit was to enjoin the city from issuing bonds to erect a municipal power plant a few years after it had sold its former plant to the plaintiff. The case was a particularly aggravating one, so far as plaintiff was concerned, for it had incurred heavy expense to comply with the

terms on which it had purchased the city's earlier plant. However, in conformity with the rules of law and precedents we have cited above, the United States district court in Mississippi held that the plaintiff was not entitled to an injunction restraining the city from issuing bonds for the erection of the proposed new power plant; but it did enjoin the enterprising business concern from selling machinery or equipment to the city required for the new power plant, on the ground that it had meddled unduly in the preëlection campaign and had paid the cost of advertising certain falsehoods touching the relationship of plaintiff to prominent men in the community. A decision of poetic justice, to say the least.

The next objection to the judgment is based on the fact that when the city officials first began to consider the advisability of establishing a municipal plant the private firm of engineers whom they consulted recommended a power system which should have three Diesel engines, two of 225 h. p. capacity and one of 110 h. p. capacity, at an estimated cost of $34,334; but after the bonds were voted, the governing body, on further advice of the same firm of engineers, materially altered and reduced the capacity of the generating power units to be acquired. In lieu of the three Diesel engines having a total of 560 h. p. capacity, the altered plans called for two such engines, one of 150 h. p. and another of 300 h. p. Other material changes and reductions from the original plans and estimates were also adopted. We do not regard these altered plans and reduced capacity of the projected power plant as a justification for judicial interference. Neither the original estimates nor the revised estimates were undertaken by statutory mandate. They were never more potent than merely as advice which the governing body was free to accept or reject. No error can be predicated on this point.

The next point urged relates to a technical defect in the notice of the bond election. The statute (G. S. 1935, 10-120) provides that the notice should be signed "by the municipal officers, or a majority of them, having authority to call an election in such municipality." Here the notice was only signed by the mayor and city clerk. Did that defect vitiate the notice and the election which was called and held pursuant to it? We think not. In the analogous case of *City of Perry v. Davis*, 97 Kan. 369, 154 Pac. 1127, the validity of a bond issue was challenged because the election notice was only signed by the city clerk whereas the statute prescribed that it be signed by the mayor and clerk. This court held the irregularity did not vitiate

the election. (See, also, *Railroad Co. v. Scott County*, 82 Kan. 795, 109 Pac. 684.)

It is next contended that the proposition on which the electors voted was ambiguous and misleading and did not clearly state the purpose of the bond issue. On this point the case of *Kansas Electric Power Co. v. City of Eureka*, 142 Kan. 117, 45 P. 2d 877, is cited. The citation is apt, but certainly it does not support appellant's contention—quite the contrary. The proposition in the present case was formulated in substantially the same language in the Eureka case. And in that case, as here, the fair interpretation of the proposition was that if bonds in the sum of $65,000 were voted the proceeds of the bond issue would provide a municipal power plant, when the fact was that nothing of the sort was intended. Actually only a power plant building and a distributing system were to be acquired from the proceeds of the $65,000 bond issue, and that the vital parts of the plant, its generating engines, dynamos, etc., were to be provided by an outlay of $99,974 of which the electors were not apprised. In the present case there was no such high-handed scheme to deceive the voters concerning what the governing body intended to provide with the proceeds of the $88,000 bond issue. This particular objection to the judgment cannot be sustained.

There is little need for further discussion in this already too lengthy opinion. We have refrained from attempting to dispose of this appeal on the ground that it was not squarely brought as a taxpayers' suit under the authorized provision of the code (G. S. 1935, 60-1121). While the petition and supplemental petition leave it doubtful whether the action was predicated on that statute, it is rather clear that no timely and precise objection was leveled at plaintiff's petition on that account. (But see *Kansas Utilities Co. v. City of Burlington*, 141 Kan. 926, 44 P. 2d 223, 296 U. S. 658-659; and *Robertson v. Kansas City*, 143 Kan. 726, 56 P. 2d 1032.) We leave undecided the question whether the adjudication of substantially the same issues by the federal court in *West Missouri Power Co. v. City of Washington*, 80 F. 2d 420, was conclusive on this plaintiff so far as this case was a mere taxpayers' suit; but see *McEntire v. Williamson*, 63 Kan. 275, 65 Pac. 244, and monograph in 105 A. S. R. 204-218.

There was, of course, no statutory requirement that the city procure a certificate of convenience and necessity from the state corporation commission in order to authorize it to establish the proposed

plant. (*Board of Public Utilities v. Kansas City P. & L. Co.*, 139 Kan. 842, 33 P. 2d 320.)

The record contains no error and the judgment is affirmed.

THIELE, J., not sitting.