No. 37,057

Dr. L. G. Jaeger and R. F. Schaeffler, *Appellants,* v. The City of Hillsboro, Marion County; J. V. Friesen, Mayor; Lloyd S. Rittgers, City Clerk; Gertrude Hett, City Treasurer; B. A. Goertz, Otto Schroeder, H. Norton Goertz, Arnold Vogt and A. V. Groening, Councilmen, and The Crummer Company, *Appellees.*

(190 P. 2d 420)

Opinion filed March 6, 1948.

*Clayton E. Kline* and *Willard N. Van Slyck, Jr.,* both of Topeka, argued the cause, and *John E. Wheeler,* of Marion, *M. F. Cosgrove, Balfour S. Jeffrey, Robert E. Russell, Philip E. Buzick* and *Earl C. Moses, Jr.,* all of Topeka, were with them on the briefs for the appellants.

*Braden C. Johnston,* of Marion, argued the cause, and *David W. Wheeler,* of Marion, and *Robert B. Fizzell,* of Kansas City, Mo., were with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action by the plaintiffs against the city of Hillsboro, its officers and other persons to enjoin the city from selling its bonds, the proceeds of which were to be used for the purpose of constructing an electric light plant and distribution system and from carrying out certain contracts in connection therewith. Issues were joined, and at the trial, demurrers of all the defendants to plaintiffs' evidence were sustained, and plaintiffs appeal from the rulings thereon.

Omitting formal allegations, the gist of the petition was that on March 16, 1946, the governing body of the city passed an ordinance providing for the issuance of $162,000 of general obligation bonds, the proceeds thereof to be used for constructing an electric generating plant and distribution system, a copy of the ordinance being at-

tached as an exhibit; that on April 12, 1946, the proposition was submitted to vote, a copy of the ballot used being attached as an exhibit, and 433 votes were cast in favor of the proposition and 360 votes were cast against it. Then follow allegations that the city advertised for bids; that the only bids received were excessive and that thereafter there was no further solicitation for bids; that thereafter and on December 10, 1946, the city caused the bonds to be registered with the state auditor and to be delivered to the Crummer Company of Wichita; that on February 4, 1947, the city entered into a contract with Fairbanks, Morse and Company for the construction of a power plant, distribution system and for installation of generating equipment for a total sum of $152,000, and at the same time and as a part of the consideration for that contract that company submitted a letter pertaining to the use of an old engine without charge. Then follow detailed allegations that the Fairbanks, Morse contract is void. Plaintiffs also allege that the $162,000 bonds created an indebtedness in excess of the amount authorized by law. Plaintiffs also allege that the city entered into a contract to sell the bonds to the Crummer Company at par; that the bonds were not submitted to competitive bidding and had they been the city would have received a premium; that the contract was a fraud upon the taxpayers of the city and should be enjoined. Plaintiffs further allege that unless the defendants are enjoined from carrying out the Fairbanks, Morse and Company contract, they will sell the bonds and unlawfully use the proceeds for the construction of an electric generating plant and distribution system in violation of law. The prayer is for judgment enjoining the sale of the bonds and the performance of the contracts mentioned.

Later an amendment to the petition was filed. The general tenor was that the bond election was void because the ballot used was not in conformity with law. Details will be later mentioned so far as may be necessary.

We here note that there is no allegation in the petition or amendment to the petition that the sale of the bonds or the performance of either contract will increase the taxes of the plaintiffs or that they will be financially injured otherwise, or that the matters asserted by them affect them in any different manner than other residents and taxpayers of the city.

The city and its officials filed an answer denying the capacity of the plaintiffs or either of them to maintain the action either indi-

vidually or as a class, and generally admitting the factual matters pleaded as to the bonds and denying otherwise. The Crummer Company filed a similar answer and denied it had any contract with the city for purchase of the bonds.

At the trial it was stipulated, among other things, that a bond election was called for April 12, 1946, and that a certain form of ballot was used; that at the election 433 electors voted for the bonds and 360 voted against; that the bonds were registered; that the city officials certified to the state auditor the bonds did not exceed the actual cost of the improvement; that they also certified as to valuation and that, including the issue of $162,000, the bonded indebtedness amounted to $186,300. It was further stipulated that the contract to sell the bonds to The Crummer Company had been canceled. It was also stipulated that at time of trial the outstanding bonded indebtedness was $19,600, not including the bonds in controversy. Other matters will be mentioned if necessary.

The evidence of the witnesses, as abstracted, is interlarded with much comment and argument of counsel made to the trial court, and much of the evidence covers matters of no particular consequence in disposing of this appeal. It also covers matters which, by reason of the stipulations at the beginning of the trial, were not in issue but were useful in developing other evidence. As an instance, controversy developed whether the election was held under G. S. 1935, 12-843, and plaintiffs sought to learn how many qualified electors there were in Hillsboro, an objection to their question was sustained and they then sought to prove that no canvass to determine the number was made. In connection with the election, the ballot form used was also the subject of much argument. It was also developed that on February 4, 1947, a construction contract was awarded Fairbanks, Morse and Company for $152,000 and that on April 29, 1947, by reason of the present litigation the contract was rescinded. It was also developed that the contract with The Crummer Company for sale of the bonds was rescinded. If need be a fuller statement will be made later. At the close of plaintiffs' evidence the city and its officials demurred on the ground that plaintiffs were not proper parties plaintiff and that neither had shown any special damage or otherwise, and on the further ground that plaintiffs had failed to establish any cause of action. The Crummer Company demurred on like grounds.

In ruling on these demurrers the trial court stated that variations

in the ballot from statutory forms would not be fatal to the ballot; that the statutory language was directory and not mandatory, and that there could be no doubt in anybody's mind as to what was being voted on and the instructions as to how to vote. On the question of the right of plaintiffs to maintain the action, the court expressed doubt but that in view of its conclusion, it would not be necessary to pass on the question. The court also expressed an opinion that plaintiffs were seeking to have the court substitute its judgment for that of the city officials about the electric light plant, and that such was not the intention of the law.

In due time the plaintiffs perfected their appeal and in this court they specify error under two general heads. The first sets forth six particulars in connection with the ruling on the demurrer, and these will be discussed later. The second sets forth that the trial court erred in rejecting certain offers of proof. With reference to this it may be said that objections to certain questions were sustained and appellants then offered to prove particular matters, the offers being refused. Whatever that proof may have been has not been brought into the record on a motion for new trial. Neither was any final judgment rendered on the merits. For either of the above reasons we may not at this time discuss whether or not the trial court erred.

Although presented last in the briefs we take up first the right of plaintiffs to maintain the action. Attention has previously been directed to the fact that it had not been pleaded that the sale of the bonds or the performance of the contracts would increase plaintiffs' taxes or that they would be financially injured otherwise, and it may here be said there was no proof to that effect. In *Grecian v. Hill City*, 123 Kan. 542, 548, 256 Pac. 163, it was said that a private citizen and taxpayer has no standing to question sale of allegedly void bonds for street improvements unless his taxes are increased or he is otherwise financially injured. The right of an individual or private corporation to maintain such a suit was before the court in *Robertson v. Kansas City*, 143 Kan. 726, 56 P. 2d 1032, and a like conclusion was reached. See syllabus ¶ 2, and authorities cited on page 731. Appellants rely principally upon three decisions, all filed on June 8, 1935: *Kansas Power Co. v. Fairbanks, Morse & Co.*, 142 Kan. 109, 45 P. 2d 872; *Kansas Electric Power Co. v. City of Eureka*, 142 Kan. 117, 45 P. 2d 877; and *Kansas Electric Power Co. v. City of Eureka*, 142 Kan. 123, 45 P. 2d 880, as authorizing their right to maintain the action. In the first opinion where the ques-

tion was raised, the question was waived, in addition to which the state became a party. In the last two cases the question is not discussed, each opinion stating the action was a taxpayer's suit. The inference is left that pleading and proof of right to maintain was sufficient. In *Kansas Power Co. v. City of Washington,* 145 Kan. 962, 970, 67 P. 2d 1095, we refrained from disposing of an appeal on the ground the action was not brought squarely as a taxpayer's suit, stating that while it was doubtful whether the action was predicated on the statute (G. S. 1935, 60-1121) it was rather clear that no timely and precise objection was leveled at the petition on that account. It may be said there is no contention that the petition stated, or the proof showed, any cause of action under G. S. 1935, 25-1505. In the instant case the trial court reached no definite conclusion on the question and did not place its ruling on the ground plaintiffs had no right to maintain the action, and appellees state in their brief that since the trial court did not rule they do not wish to argue the point. Whether the question can be waived need not be decided. While we are of opinion that appellants have not pleaded and proved facts showing their right to maintain the action, under the circumstances we have concluded to notice briefly their complaints as to the trial court's ruling on the demurrer.

Appellants' first complaint is that the bond election was void because the ballot failed to follow the form prescribed by statute, the essence of its argument being that the form of ballot must literally follow the statutory direction. It may be said that our general bond statute, G. S. 1935, 10-120, provides an arrangement of ballot and the use of certain sentences and words, and that our general election law providing for submission of a proposition to electors, G. S. 1935, 25-605, sets forth similar requirements. Examination will disclose that the arrangement of the required statements does not follow the same order. The ballot used in the instant case followed the order set forth in the last-mentioned statute. Appellants complain also that the ballot instead of using the statutory language, common to both acts, "make a cross $\times$ mark," enclosed the $\times$ in parentheses, thus ($\times$). They further complain that the words "Yes" and "No" are capitalized in the statutory form, but that on the ballot there was no capitalization. Complaint about variations in punctuation need not be set forth. It may be said that no statute, authorizing issuance of electric light bonds, to

which our attention has been directed, specifies any particular form of ballot. It is not necessary to our decision that we determine definitely that the statutory form is mandatory or that it is only directory. In *Stanhope v. Rural High-school District*, 110 Kan. 739, 205 Pac. 648, this court considered a ballot of the general form used in the instant bond election, and containing some of the same defects of which complaint is made. It was there said that even if the general election law governed there was very little the matter with the form of ballot, and that irregularities in elections where there have been departures from directory provisions of the statute did not vitiate the election where such irregularities did not frustrate or tend to prevent the free expression of the electors' intentions, nor otherwise mislead them, citing a number of our cases in support. We agree with the trial court that no person of average intelligence was deceived either by the arrangement or form of the ballot, or by slight deviations of capitalization or punctuation therein, and under the reasoning of the last cited case, the complaints made may not be sustained.

Appellants also complain that the proposition as stated on the ballot presents no question to be voted on even though followed by a question mark and they suggest how it should have been stated. Without repeating the proposition as stated, we think it sufficient. They further complain that the proposition has inherent duality in it in that it provides for an electric light plant and a distribution system. We are of opinion that only one question or proposition was submitted. As bearing on this question see *Thomas v. Covell*, 119 Kan. 684, 240 Pac. 574; *Pittsburg Board of Education v. Davis*, 120 Kan. 768, 245 Pac. 112; and *Robertson v. Kansas City*, supra.

Appellants also contend the election was void because the proposition submitted did not disclose that Fairbanks, Morse and Company were to furnish an old engine for use without charge, and under the reasoning in *Kansas Electric Power Co. v. City of Eureka*, 142 Kan. 117, 45 P. 2d 877, the election was invalid. The bond election was held April 12, 1946. The offer of the old engine was not made until January 23, 1947, and was then made in connection with a construction bid. There was no proof of any understanding of any kind when the bond election was held. The contention as made cannot be sustained.

Appellants further contend that the bond election can constitute

no authority for the bonds because the city officials failed to ascertain that a majority of the qualified electors had voted in favor thereof, and in essence is predicated on the contention that the only statute authorizing the bonds is G. S. 1935, 12-843, which requires a vote of the "majority of the qualified electors" of the city. In support of the meaning of the quoted phrase, our attention is directed to *Clayton v. Hill City,* 111 Kan. 595, 207 Pac. 770, where it was said that those voting in favor of the bonds must form a majority of all entitled to vote at the election and not simply a majority of those voting at the election. *Kansas Electric Power Co. v. City of Eureka,* 142 Kan. 123, 45 P. 2d 880, is cited in support of the question of exclusiveness of G. S. 1935, 12-843. In that case the one question was the right to construct an entire municipal electric light plant and distribution system, part of which was to be financed by revenue bonds and part by general obligation bonds which could be issued only on vote. There the city contended that its authority to raise funds was not restricted to the statutory method provided by R. S. 12-843. In the course of an opinion holding that could not be done it said that, "where a city does not have the money to construct or otherwise acquire a municipal light and power plant, the means provided by the statute R. S. 12-843 is exclusive, and that the ingenious scheme of paying for it by issuing installment obligations, termed 'revenue certificates,' payable monthly for the next five years out of expected net revenues of the utility, is wholly unauthorized by law and cannot have the sanction of judicial approval." (l. c. 126.) As we construe that opinion the statement that R. S. 12-843 is exclusive means only that the bonds voted under it may not be supplemented by revenue bonds to finance one municipal improvement.

Without setting forth their terms, G. S. 1935, 12-801 and 12-834, provide for elections to issue bonds for the purpose of construction works to supply the city with electricity, and under each of these acts the test is of a "majority of the electors voting at an election."

We pause here to say that the record does not disclose under which statute the bonds in question are issued, nor does it include any copy of the bonds nor of the ordinance directing their issuance. G. S. 1935, 10-112 requires that municipal bonds "shall recite the authority under which they are issued and that they are issued in conformity with the provisions, restrictions and limitations thereof . . . ." Unless it be made to appear by the appellants, attacking

the bonds, and it has not, that the bonds were issued under authority of G. S. 1935, 12-843, we cannot assume that to be the fact; rather the assumption must be that bonds prepared for issue and duly registered with the state auditor, are bonds which have been duly authorized. (Cf. *Sheldon v. Board of Education,* 134 Kan. 135, 141, 4 P. 2d 430.)

Under a title that the purported execution and registration of the bonds are illegal and void, rendering the bonds void, because of other irregularities, our attention is directed to a certificate attached to the bond transcript that the total amount of the bond issue does not exceed the actual cost of the proposed improvement, as well to another certificate in which there appears to be a discrepancy in dates. We shall not set forth any details thereof. A careful consideration of the complaints discloses that at most the matters complained of are only irregularities and do not affect the substantial merits.

Appellants also complain that the proposed issue exceeds the bond limits. Without detailing the figures, it appears that possibly when the bonds were authorized, had they been immediately issued there would have been an excess, but the record discloses that at the present time the bonds have not been sold, sent out, delivered or put into circulation (*State, ex rel., v. Woodruff,* 164 Kan. 339, 189 P. 2d 899 [opinion filed February 16, 1948] *ante,* p. 399) and that the proposed issue and other bonds now outstanding and properly to be considered, do not exceed the statutory limit (G. S. 1935, 10-303). The effective date for determination is date of issue and not date of authorization. Appellants' contention is denied.

A careful consideration of the record leads to a conclusion that the trial court did not err in sustaining the demurrers to plaintiffs' evidence and that ruling is affirmed.

WEDELL and HOCH, JJ., not participating.