No. 38,873

THE CITY OF HORTON, KANSAS, a municipal corporation, *Plaintiff*, v. GEORGE ROBB, Auditor of State of the State of Kansas, *Defendant*.

(246 P. 2d 253)

Opinion filed July 9, 1952.

*Clarence J. Moore,* of Horton, argued the cause, and *Robert B. Fizzell,* of Kansas City, Missouri, and *Robert L. Webb,* of Topeka, were with him on the briefs for the plaintiff.

*William P. Timmerman,* assistant attorney general, argued the cause, and *Harold R. Fatzer,* attorney general, was with him on the briefs for the defendant.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus in which the City of Horton seeks to compel the auditor of the state of Kansas to register certain revenue bonds issued by the city under the authority of Laws 1947, chapter 107, now appearing as G. S. 1949, chapter 10, article 12, as amended by Laws 1951, chapter 129, now appearing as G. S. 1951 Supp. 10-1201, which bonds had been tendered to the auditor for registration and registration refused.

As the auditor contends only that the above statute is not applicable under the facts, and presents no contention that the procedure under that statute was not followed, we limit our statement of the pleadings filed. The word "bonds" as hereafter used includes attached interest coupons, unless the context shows otherwise.

In its motion for the writ the city alleges that it owns and operates a sewage disposal plant and facilities of a revenue producing character for the treatment and disposal of sewage and is authorized by the laws of Kansas to issue its general obligation bonds for the reconstruction, enlargement and improvement of such utility, and by the provisions of G. S. 1949, chapter 10, article 12, and G. S. 1951 Supp. 10-1201, it is authorized and empowered to issue and

sell revenue bonds to pay the cost of such project; that its present sewage disposal plant is inadequate and it is necessary to reconstruct, enlarge and improve it. To that end the city published preliminary notices required by the above statute and thereafter passed ordinances fixing rates to be charged for use of the services rendered by the sewage disposal plant to be reconstructed, enlarged and improved by it, determining the costs of the improvement, declaring the necessity of its issuing sewage disposal plant revenue bonds in the principal amount of $114,000 to pay the costs of the improvement, authorizing and directing issuance of such bonds, and that thereafter such bonds, described in detail, were issued and registered in the office of its city clerk; that thereafter the city filed with the auditor a complete transcript of all of its proceedings leading up to the issuance of the bonds, and tendered the bonds to the auditor and requested registration thereof by him, but that he refused and refuses to register the bonds. The city pleaded at length that it had fully complied with the laws of Kansas; that the bonds were valid obligations payable from revenue derived from rates, fees and charges collected by the city for the use of services rendered by the sewage disposal plant and that, as a matter of right it was entitled to have the bonds registered. Attached to the petition as an exhibit is a transcript of the proceedings of the city leading up to the issuance of the bonds. After alleging that it has no plain and adequate remedy at law and would suffer irreparable injury if its bonds be not registered, the city prayed that a writ of mandamus issue against the auditor commanding him to register the bonds.

The auditor filed his motion to quash the city's motion for the writ of mandamus for three reasons. (1) That the ordinance passed by the city fixing rates to be charged for the use of and services rendered by the sewage plant of the city is void and of no effect because the city (Horton), being a city of the second class, has no authority under the laws of Kansas to make such a charge. (2) That the city has no authority under the laws of Kansas to make a charge for the use of its sewage disposal plant, as the said plant is not a "publicly owned utility, instrumentality or facility of a revenue producing character" for which revenue bonds may be issued to furnish funds for the construction, reconstruction or alteration thereof, and (3) the city has full authority, under G. S. 1949, 12-630a, to issue its general obligation bonds to provide funds for paying the cost of providing a system of sewage disposal works.

In his brief the auditor does not separately discuss the three grounds set forth in his motion to quash, but says that the broad question is whether a city of the second class has the power, either express or clearly implied, to issue and sell revenue bonds for the reconstruction of its existing *non-revenue producing* sewage disposal plant and to fix and collect charges for use of the enlarged plant.

Consideration of that question requires that we notice the statutes relied on by the city insofar as they bear upon the question. Except where otherwise noted, references are to the General Statutes of 1949. As originally enacted, 10-1201 defined a municipality as one defined by G. S. 1935, 10-101. There is no controversy but that the City of Horton is within the definition. It further defined "utility" as "any publicly owned utility, instrumentality or facility of a revenue producing character." By G. S. 1951 Supp. 10-1201, the last definition was expanded by adding to the above quoted language the following: "including but not limited to plans, facilities and instrumentalities for the purpose of supplying . . . sewage disposal plants and facilities."

Under 10-1202 it is provided:

"Any municipality having a population of less than 100,000 inhabitants and authorized by the laws of the state of Kansas to issue general obligation bonds for the acquisition, construction, reconstruction, alteration, repair, improvement, extension or enlargement of any utility is hereby empowered to issue and sell revenue bonds in payment of the cost of such utility or improvements, to fix by ordinance or resolution such rates, fees and charges for the use thereof or services therefrom as may be reasonable and necessary and to provide for the manner of collecting and disbursing such revenues subject to the limitations hereinafter contained."

Under 10-1208 it was further provided:

"Provision shall be made by appropriate enactment by the governing body or other proper officers having the control and management of the utilities of such municipality for the payment of said bonds by fixing rates, fees or charges for the use of or services rendered by such utility, which rates, fees or charges shall be sufficient to pay the cost of operation, improvement and maintenance of the utility, provide an adequate depreciation fund and pay the principal of and the interest upon said bonds when due."

Other sections of the act need not be reviewed.

In his brief, and as a preliminary to his discussion, the auditor states that the city relies wholly upon the above statutes as a grant of power to issue revenue bonds and fix rates, but that he has grave doubts as to the existence of such power. After directing

attention to the well recognized rule that municipalities, being creatures of the legislature, cannot issue and sell bonds unless the power to do so is conferred by legislative authority, either expressly conferred or clearly implied, and that any reasonable doubt as to the existence of such power is to be resolved against its existence (see e. g. *State, ex rel., v. Rural High School District No. 7*, 171 Kan. 437, 233 P. 2d 727, and cases cited), the auditor states the burden of establishing power is on the city, which must satisfy this court beyond a reasonable doubt that such power exists. The gist of his argument that the statutes involved do not give the city the power which it asserts it has, is that prior to the adoption of the ordinances above mentioned the city had made no provision for any rate, charge or fee for sewer disposal services, and that it is not now operating a sewage disposal system for revenue; that as a city of the second class the city had no power to provide for any such rate, charge or fee; that not having a sewage disposal system for the service of which a rate, charge or fee was being collected, such system was not "of a revenue producing character," and the act had no application to the city. In support of his contention the city had no power to fix a rate, charge or fee, the auditor directs attention to G. S. 1949, 15-714 enacted in 1929, where such a power is expressly granted to cities of the third class, and to certain proposals in the legislature to make an express declaration as to cities of other classes, none of which was enacted into law. The auditor also directs attention to G. S. 1949, 12-630a, which authorizes cities of less than 50,000 to provide sewage disposal systems and to pay therefor by general obligation bonds, or if the city is authorized by statute to make service charges for the disposal of sewage, the bonds may be made payable out of that revenue, and he argues that the above statute and failure to enact proposals indicate the legislature was aware of the fact that only certain cities were authorized by statute to fix service charges.

The city contends that its sewage disposal plant is of a revenue producing character, and that under the statutes first mentioned, it does have authority to make a charge, and that the fact that G. S. 1949, 12-630a, may authorize it to issue general obligation bonds does not prevent it from issuing revenue bonds under the statutes on which it relies. It is here noted that the statutes relied on by the city require that it have power to issue general obligation bonds

as a condition precedent to its right to issue revenue bonds (G. S. 1949, 10-1202).

A consideration not only of the briefs, but of the oral arguments and of the statutes involved leads to the following: We are of the opinion it is unnecessary to review our statutes to determine whether, aside from those now relied on by the city, either expressly or by clear implication, power was conferred on cities of the second class to provide for rates, fees or charges for the use of a sewage disposal system, or to decide categorically that for such a system to be "of a revenue producing character," such a revenue must have been collected, before resort could be had to G. S. 1949, 10-1201, *et seq.*, as amended. The fact the city may have had the power to issue general obligation bonds to construct a sewage disposal system did not preclude it from issuing revenue bonds under the statutes now relied on. We think it is clear from the statute that any city having a population of less than 100,000 inhabitants which has authority to issue general obligation bonds for, *inter alia*, the construction, reconstruction or enlargement of a sewage disposal system, is authorized to issue and sell revenue bonds in payment of the cost thereof and is commanded to fix such rates, fees and charges as are reasonable, proper and sufficient to pay the cost of operation, improvement and maintenance of such system, to provide an adequate depreciation fund and to pay the principal of and the interest on the bonds when due. We cannot agree with the auditor's contention that the system must have been producing revenue from rates, fees and charges before resort could be had to the statutes relied on by the city.

The plaintiff city is within the population figure above stated, the regularity of its proceedings under the statutes relied on is not questioned, and upon the whole record we conclude that the auditor's asserted reasons for refusal to register the bonds in question are insufficient in law, and that his motion to quash should be denied. The purpose of the auditor in refusing to register the bonds was to have the legal questions submitted determined, and that has been done.

The court will retain jurisdiction, and if the bonds are not registered within ten days from the filing of this opinion, a writ of mandamus will issue. The costs are taxed against the city. (*Johnson County Comm'rs v. Robb*, 161 Kan. 683, 700, 171 P. 2d 784.)

Judgment in accordance herewith and in favor of the city is ordered and adjudged.