WAYNE GRAY, et al., *Appellants*, v. JOINT RURAL HIGH SCHOOL DISTRICT No. 9, OSAGE AND FRANKLIN COUNTIES, STATE OF KANSAS, et al., *Appellees*.

No. 39,883

WAYNE GRAY, et al., *Appellants*, v. JOINT COMMON SCHOOL DISTRICT No. 30, OSAGE AND FRANKLIN COUNTIES, STATE OF KANSAS, et al., *Appellees*.

(286 P. 2d 147)

Opinion filed July 6, 1955.

*Samuel Mellinger,* of Emporia, argued the cause, and *Clarence V. Beck,* and *Earl B. Shurtz,* both of Emporia, were with him on the brief for the appellants.

*Alex Hotchkiss,* of Lyndon, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: The present appeals grow out of actions brought to enjoin issuance and sale of school district bonds, and under circumstances later discussed.

Although only inferentially alleged, in the amended petitions later mentioned, the territory of Joint Rural High School District No. 9, Osage and Franklin counties, hereafter referred to as District 9, and the territory of Joint Common School District No. 30, Osage and Franklin counties, hereafter referred to as District 30, overlap. In April, 1954, the school boards of the two districts agreed to construct a building for the joint use of the two districts at an estimated cost of $265,000 of which District 30 was to pay $122,000 and District 9 was to pay $143,000. As is later set forth elections for authority to issue bonds to defray costs were had in each district, and the propositions carried. Thereafter taxpayers in the two districts, many of whom reside in the overlapped territory, commenced the instant actions.

The questions raised on the appeals are not only common to both appeals but common to the two amended petitions filed which for our purposes are alike except as to the status of the parties, the amount of bonds to be issued by the defendant district in each case, the result of the election in each district, and necessary changes in language to refer to the district not a party in each particular case. We therefore confine our review to the petition in No. 39,882.

Omitting formal allegations it was alleged in the petition that on June 1, 1954, the defendants purported to hold an election to vote on the question whether District 9, pursuant to G. S. 1953 Supp., 72-507, 2017 and 2018, should issue and sell its general obligation bonds in an amount *not to exceed $143,000* for the purpose of paying its share of the cost of purchasing a site and constructing a building, at the *total estimated* cost of $265,000 to be constructed and used jointly with District 30, and provided and upon the condition that the bonds should not be issued until and unless the electors of District 30 authorized the issuance and sale of $122,000 of general obligation bonds to pay its share of the cost of said joint building. It was further alleged that a majority voted in favor of the bonds

and at a meeting on June 4, 1954, defendants found the question was adopted; that on June 11, 1954, at a special meeting called for the purpose the defendants found that at a purported election on June 1, 1954, a majority voted in the affirmative on the question whether District 30, pursuant to the above statutes, should issue and sell general obligation bonds of that district in an amount of not to exceed $122,000 for the purpose of paying its share of the improvement at the total estimated cost of $265,000 to be used jointly with District 9, provided said bonds should not be issued unless the electors of District 9 authorized the issuance and sale of $143,000 of bonds to pay its share of the joint building. Paragraph 5 was an allegation that on August 6, 1954, the defendants entered into a written agreement with District 30 that the estimated cost of the improvement would be reduced to $247,000, of which the amount to be borne by District 9 was $133,500 and the amount to be borne by District 30 was $113,500. Other allegations as to preparation of plans, preparation to issue bonds, burdens of taxpayers and similar matters need not be set forth. In paragraph 6 it was further alleged the defendants were without authority to issue bonds under reasons set out as A1, 2, and 3, B, C, D, and E.

Reason A was that the purported election was void because: 1. The election notice, copy of which was attached, was published in a newpaper not of general circulation; 2. The election notice and the ballot used failed to set forth the amount of the bonds as required by G. S. 1953 Supp., 72-2018, "setting out instead that the amount of the bonds would be in the amount of not to exceed $143,000."; and 3. Alleging the assessed valuations for 1953 and 1954 of both districts and that the propositions submitted were deceptive and misleading in that neither district possessed authority to issue bonds up to the amounts set forth in the notices of election and in the ballot used under G. S. 1953 Supp., 72-2017, which provides that the aggregate bonds in the district outstanding at any time shall not exceed seven per cent of the assessed valuation of tangible taxable property within the district.

Reason B was that because of the assessed valuations as set out, the defendant had no right or power to authorize the issue or sale of $143,000 of general obligation bonds to pay its share of the joint building.

Reason C was that because of the purported submission of the proposition as set out and the failure to submit any other proposi-

tion the defendant has no right or power under the statutes to reduce the amount and to authorize the issue or sale of $133,500 of general obligation bonds to pay its share of the joint building.

Reason D was that the proposition voted on rested upon the condition the bonds should not be issued until and unless the electors of District 30 authorized issuance of $122,000 of bonds, and that because of the assessed valuation of District 30 it had no power to issue bonds in that amount to pay its share of the cost of the joint building.

Reason E was that because of the submission of the proposition as above set forth and the failure to submit any other proposition District 30 had no right to reduce the amount and issue bonds in the amount of $113,500.

The prayer of the petition was that defendants be enjoined from issuing bonds and selling them or doing any act resulting in the creation of any public burden or levy of any illegal tax, etc.

The only parts of the election notice and of the ballot used, material to this appeal, pertain to the question submitted which was:

"Shall Joint Rural High School District No. 9, Osage and Franklin Counties, State of Kansas, pursuant to the provisions of G. S. 1953 Supp. 72-2017, 72-2018 and 72-507 issue and sell its general obligation bonds in the amount of not to exceed $143,000 for the purpose of paying its share of the cost of purchasing a site and constructing a school building thereon and furnishing and equipping the same, at the total estimated cost of $265,000, to be constructed and used jointly with Joint Common School District No. 30, Osage and Franklin Counties, State of Kansas, provided and upon condition that said bonds shall not be issued until and unless the electors of said Joint Common School District No. 30, Osage and Franklin Counties, State of Kansas, authorize the issuance and sale of $122,000 of general obligation bonds to pay its share of the cost of said joint building?"

The defendants moved that all of paragraph 5 as set forth above and all of paragraph 6A2, A3, B, C, D and E be stricken. On the hearing by agreement of counsel and ruling of the court, this motion was treated as a demurrer, and was sustained by the trial court, and an appeal was perfected to this court from the ruling. Thereafter the plaintiffs moved the trial court for permission to withdraw from paragraph 6A1 of their petition the allegation the notice of election was published in a newspaper not of general circulation. This motion was allowed and thereafter the defendants filed their demurrer to the petition on the ground facts sufficient to constitute a cause of action were not stated. This demurrer was sustained and

plaintiffs perfected an appeal to this court. These appeals were consolidated as No. 39,882. As is previously indicated, the action against District 30 followed the same general course, and resulted in appeal No. 39,883.

In each appeal the specification of errors is that the trial court erred in sustaining the motion to strike the portions of the amended petition as above set forth and in sustaining the demurrer. In the consolidated brief filed, appellants do not present any separate argument as to rulings on the motions and on the demurrers but state two questions are involved: 1. Should the school districts be enjoined from issuing and selling their bonds for failure to comply with the requirements of G. S. 1953 Supp., 72-507, 72-2017 and 72-2018? and 2. Were the bond propositions submitted to the electors sufficiently misleading to vitiate the elections?

It is not necessary that we set out in full the above mentioned statutes. Under 72-507 any common school district located wholly or partly within the boundaries of a rural high school district may unite with the latter district in the construction of a school building for the joint use of both districts "in the manner provided in this section" which continues as follows:

"The estimated cost of the initial construction or purchase of such joint building or buildings, including the cost of purchasing a site or sites therefor and furnishing and equipping the same, and the amount to be borne by each of the uniting districts, shall be determined and agreed upon by the boards of such districts. Thereafter, each of such boards shall submit to the electors of its district, in the manner provided by law, the proposition of issuing bonds of the district in the amount as previously determined. Such proposition in addition to stating the amount of bonds to be issued by the district voting thereon and the purpose for which such bonds are to be issued, shall also show the total estimated cost of constructing or purchasing the building or buildings, and the vote in each district shall be conditional upon the corresponding proposition carrying in the other district. If a majority of the votes cast in each district on such propositions are in favor thereof, the board of each district may issue bonds in the amount authorized and join with the board of the other district in the construction or purchase of such joint building or buildings."

The remaining parts of the section are not of present importance.

Under 72-2017 provision is made for issuance of bonds of common-school districts and rural high-school districts for stated purposes, including construction of jointly owned buildings, and procedure for calling elections therefor, none of which need notice here. The concluding sentences of the section read:

"The aggregate amount of bonds of a district outstanding at any time (exclusive of bonds specifically exempt from statutory limitations of bonded indebtedness) shall not exceed seven percent of the assessed valuation of tangible taxable property within the district. All bonds issued hereunder shall be issued in accordance with the provisions of the general bond law."

Under 72-2018 provision is made for calling of an election to vote on the bonds, for notice of the election, conduct thereof and that the election shall be by ballot. In view of the contentions later discussed it is not necessary this section be summarized further here.

Taking up the first question proposed by the appellants, we note that although they make no contention the trial court erred in striking the same from their amended petition, extensive reference is made as to the assessed valuations of the two districts, and they state that the amount of the two bond issues voted upon exceeds the seven per cent limitation of G. S. 1953 Supp., 72-2017. The gist of their contentions is that school districts have only such powers as are conferred on them by statute, specifically or by clear implication, and any reasonable doubt as to the existence of such power should be resolved against them (e. g., *Yoder v. City of Hutchinson*, 171 Kan. 1, 8, 228 P. 2d 918; *State, ex rel., v. Rural High School District No. 7*, 171 Kan. 437, 233 P. 2d 727, and cases cited therein); that under G. S. 1953 Supp., 72-507, the estimated cost of the building and the amount to be borne by each district shall be determined and agreed upon by the boards of the districts and thereafter each board shall submit to the electors the proposition of issuing bonds in the amounts as previously determined, and that the proposition in addition to stating the amount of bonds to be voted shall also show the total estimated cost of constructing the building; that the statute, in terms, refers to the amount to be borne by each district and not the share or percentage of the total amount, and if the districts could not agree on the amounts the project would end, and that immediately preceding the elections the members of the two boards were entitled to assume that District 9 would provide $143,000 and that District 30 would provide $122,000. After directing attention to the second meeting at which a new estimate of total costs and a new apportionment to each district was made, all based on allegations stricken from the amended petition, it is argued that a new election should have been held, and our attention is directed to authorities holding that a municipality cannot issue bonds unless power to do so is conferred by either express or clearly implied legislative authority, and if there is any doubt as to the

existence of such power it is to be resolved against the municipality (citing e. g., *Kaw Valley Drainage Dist. v. Kansas City,* 119 Kan. 368, 239 Pac. 760; *School District v. Robb,* 150 Kan. 402, 93 P. 2d 905; and *City of Horton v. Robb,* 173 Kan. 398, 246 P. 2d 253).

We are satisfied as to the correctness of the rules stated in the cases cited above, but do not agree that application of them compels any conclusion the districts involved here have failed to comply with the applicable statutes. In the first place, it is not debatable but that whether the elections were properly held depends on the facts obtaining as of the date of the elections.

The applicable statutory limitation of seven per cent is applicable to "the amount of bonds . . . outstanding at any time" (72-2017) which, without extension of argument, must refer to bonds which have been issued. A contention analogous to that now presented was considered in *Jaeger v. City of Hillsboro,* 164 Kan. 533, 190 P. 2d 420, where it was said:

"Appellants also complain that the proposed issue exceeds the bond limits. Without detailing the figures, it appears that possibly when the bonds were authorized, had they been immediately issued there would have been an excess, but the record discloses that at the present time the bonds have not been sold, sent out, delivered or put into circulation (*State, ex rel., v. Woodruff,* 164 Kan. 339, 189 P. 2d 899 . . .) and that the proposed issue and other bonds now outstanding and properly to be considered, do not exceed the statutory limit (G. S. 1935, 10-303). The effective date for determination is date of issue and not date of authorization. Appellants' contention is denied." (l. c. 541)

It is to be noted further that the proposals were to vote bonds in an amount *not to exceed* a stated amount. Any contention that the exact amount of bonds to be issued was not stated and therefore the elections were illegal cannot be sustained. At the time of the elections there was nothing to indicate the full amount would not be issued and sold. In *Pittsburg Board of Education v. Davis,* 120 Kan. 768, 245 Pac. 112, it was held that the fact the statutes prohibit the issuance of bonds in excess of the amount named does not prohibit voting for more than that amount. In that opinion cases in support are reviewed. In an analogous case this court, considering a proposition submitted wherein bonds "not exceeding" a stated sum were voted upon, held that "this slight departure from the precision of statement required by the statute" did not render the proposed issue illegal (*City of Oswego v. Davis,* 97 Kan. 371, 154 Pac. 1124; cf. *State, ex rel., v. Kansas City,* 149 Kan. 252, 86 P. 2d 476). Appellants cite *State, ex rel., v. Robb,* 163 Kan. 502, 183

P. 2d 223, as supporting their contention that an election for issuance of bonds in excess of statutory limitations is illegal. It is true that in that case, which was in mandamus to compel the state auditor to register bonds, the writ was denied, but the basic reason for refusal was that the act relied upon by the plaintiffs was held not to have been properly enacted and to have been ineffective. The case does not support the contention. At the time the present elections were called and when they were held the total cost of the improvement was an estimated cost and not a finality. Had the improvement cost less than the estimated cost, the bond issue would have been limited to the actual cost and expense of such improvement (G. S. 1949, 10-104) and likewise it would have been limited by the statutory seven per cent provision quoted above.

At the time the elections were held the electors of the two districts, as well as the school boards, knew that if the estimated cost of the improvement was too high and that the improvement could be constructed for a less sum, or that a change in the assessed valuation might prevent issuance of the full amount of bonds authorized, a lesser amount was all that could be issued and sold. We are advised by the stricken allegations and exhibits that subsequent to the elections there was some reduction in the assessed valuations and that the estimated cost of the improvement was reduced and the amount to be paid by each district was reduced to stated figures. A mere calculation shows the reduction preserved the original ratio of costs to each district. There is no allegation that the action of either board was arbitrary or fraudulent or that the negotiations and agreements between them were collusive.

Waiving for the time being the contention next considered that the questions submitted to the electors were misleading, we think it may not be held that the elections authorizing the issuance and sale of bonds to erect a joint school building were void or that because the full amount of bonds authorized may not be issued and sold, the school districts and their school boards should be enjoined from the issuance and sale of bonds within the statutory limitations applicable at the time of their issuance.

In support of their contention that the proposition and question submitted by the notice of election and the ballot were so misleading as to vitiate the elections, the appellants present an extended argument which to some extent covers matters previously considered. We have previously quoted the proposition or question submitted to the electors of District 9, and in the interest of clarity

and brevity we shall refer only to it for, with necessary changes in the names of the districts and the amount of the bonds to be issued, the notice of election and ballots used in both elections were the same. What is said with reference to District 9 applies to District 30. Summarized as it must be, appellants, after directing attention to the fact the question submitted was whether District 9 should issue bonds in an amount not to exceed $143,000 to pay its share of the cost of a joint building at an estimated cost of $265,000, upon condition that the bonds should not be issued unless the electors of District 30 authorized the issuance of $122,000 of bonds to pay its share of the cost of the joint building, argue that the proposition shows clearly what the electors were to decide; that the amount of bonds to be voted by District 30 was a fixed figure not qualified in any way; that the electors of District 9 could not legally authorize the issuance of $143,000, because beyond the seven per cent limitation; that under the question submitted the electors were led to believe that the board had lawful authority to carry out the terms of the proposition; that the question submitted contained a definite and unqualified condition and that no bonds could issue until District 30 authorized bonds in the amount of $122,000 and no less. In support of their contention that the question stated in the notice and in the ballot was not adequate and did not present the proposition so that the electors were informed and could vote intelligently, appellants direct our attention to *Kansas Electric Power Co. v. City of Eureka,* 142 Kan. 117, 45 P. 2d 877, and to *Board of Education v. Powers,* 142 Kan. 664, 51 P. 2d 421, and quote language therefrom. The facts of those cases vary so greatly from the situation now presented that they are not controlling. While it is true the question submitted in each of the cases was held such as to vitiate an election, the fact is that in the first case the electorate voted on a proposition to issue $65,000 to construct an electric light distributing system, power plant and appurtenances, and were not advised that $99,974 worth of revenue bonds were to be issued to cover a part of the total cost. In the second case the question submitted was to issue bonds in the amount of $198,500 for the purpose of erecting a school building, but which failed to disclose that proceeds of a federal grant were also to be used and that the total cost would be $391,500. If it be a fact the original estimated cost was reduced from $265,000 to $247,000, and if it be a fact such reduction was compelled because of statutory limitations as to the amount of bonds which could

be issued, it required no notice of that in the question submitted, because, at the time the election was held, no reduction had been agreed on. There was nothing misleading for the reasons the electors knew at all times they could not exceed the statutory seven per cent limitation, and they were advised by the question submitted that the total cost stated was not a finality, but only an estimated cost. The electors in District 9 knew that the bonds could not exceed $143,000, in any event, and that they might be less if the improvement did not cost the estimated cost, or that bonds in excess of statutory limitations could not be issued. Nor do we think the voters had any cause to believe that regardless of the amount of bonds District 9 might issue, District 30 had no choice but to issue bonds in the amount of $122,000. They must be presumed to know that the electors of that district were under the same statutory authority and restrictions as they were, and this appears in the question submitted where those statutes are specifically mentioned. In our opinion the proposition and question submitted were substantially in accord with the statute and the voters were not misled. The notices of the elections showed that the elections were held in different rooms of the same school building in Quenemo, which we must assume was within the territorial limits of both districts. The petitions do not disclose the fact, but it seems a fair inference that many of the electors lived in territory common to both districts and were charged with the content of both election notices and knew fully and intelligently the effect of their votes.

We have not overlooked the criticism of appellants that the statute (72-507) states that the cooperating school boards shall determine and agree upon the total estimated cost of the joint building "and the amount to be borne by each of the uniting districts," while the concluding part of the question submitted states the bonds of District 9 shall not be issued unless District 30 shall authorize $122,000 of bonds to pay its *share of the cost*. Appellants seem to contend the voters were misled because of the use of the word "share" instead of the word "amount." Assuming the word "share" should not have been substituted, we do not think any one was confused in the slightest because it was.

We find it unnecessary to discuss the appellees' contention that the trial court should have taken judicial notice of facts not appearing in the petitions and which it refused to do.

In our opinion the motions to strike allegations from the appel-

·lants' amended petitions, and the demurrers to those petitions raised the same questions presented under the contentions above discussed and that the rulings of the trial court thereon should be, and they are, affirmed.